LEWIS et al. v. EQUITABLE MORTGAGE Co., and vice versa.

1. Where one is induced to make a loan of money by the fraud of the borrowers and their confederate, and as a consequence of the fraud the security for the loan, taken at the time of the lending,

is essentially inadequate and insufficient, the lender, on discovering the fraud, may, without surrendering the security or offering to surrender it, follow the money lent, or its proceeds if they can be identified, in the hands of the borrowers, their confederate or any one for whom the confederate acted as agent while aiding in the commission of the fraud. In such case, the court having jurisdiction of the matter, with power to administer equitable remedies and relief, would control both the security and the proceeds of the loan so as to administer appropriate redress to the creditor and at the same time protect the legitimate interests and rights of the wrong-doers.

2. Where a person acting as agent for his wife commits a fraud in her behalf and she takes the fruits thereof, although in ignorance of the fraud, she cannot retain them as against the person defrauded, if the agent himself could not have retained them had they been his own and his fraud had been committed for his own benefit. Notice to the agent is notice to the principal.

3. Where the written title to land is in the husband, although he may have paid for it with his wife's money so that he holds it in trust for her, yet if no trust appear on the face of the title, purchasers for value from him or from his vendee are protected against her equity unless they had notice of it, actual or constructive, when they acquired their interest and parted with their money. There was not enough evidence (even including all that was offered and ruled out) tending to show notice, to make notice a substantial issue in this case.

4. Agents to inspect land offered or about to be offered as security for a loan, the inspection being for the sole purpose of ascertaining its character and value, are not agents of the lender to receive notice of an adverse title or an outstanding equity.

5. An agent to examine, form an opinion and report to his principal, with no duty to express his opinion to others, cannot, by his declarations, affect the rights of his principal or of those in whose behalf the principal was acting.

6. The fraud attributed to certain of the defendants, in the plaintiff's petition, being: that for the purpose of procuring a loan they represented to the plaintiff that they had bought the land in question from another of the defendants for the sum of fifteen thousand dollars; that they made oath before a notary public that the terms of their purchase were eight thousand dollars cash and seven thousand dollars payable when they obtained the contemplated loan; that the representations and oath were false; that the defendants who bought and the one who sold conspired together to defraud the plaintiff by falsely representing that the purchase was for fifteen thousand dollars, so as to procure a loan on the security of the land for $8,062.50; that to effectuate their object they collusively resorted to the artifice of a pretended sale and conveyance

by one of the defendants to some of the others for the nominal sum of fifteen thousand dollars expressed in the deed, pretending that eight thousand dollars of it had been paid in cash, when none of it was so paid but only a very insignificant part was paid at all and this payment in land ; the petition not alleging that the plaintiff did not examine or inspect the land or have it examined or inspected, nor that the plaintiff in making the loan and taking the security relied upon or was influenced by the representation, nor that the oath taken before the notary was ever seen or read by the plaintiff (a corporation) or by any of its officers or agents, and the evidence produced at the trial showing that there was an actual inspection made of the land by persons whose report as to its value the plaintiff had strong reasons to trust and in the nature of things probably did trust on the faith and credit of a certain corporation who employed these inspectors, and there being no evidence that the plaintiff reposed any trust or confidence whatever in the representations made by the defendant as to the value of the land or as to the cost of it, or the payment of the purchase money, and the value of the security not being affected either with respect to title or any other matter by the question of payment or non-payment of the purchase money,—it was error to charge the jury in effect that if certain of the defendants conspired to borrow the money upon representation that the land was worth the amount represented, when in fact it was worth "a great deal less," and the representation was false, and the money was procured by fraud, the finding on the issue of fraud should be for the plaintiff. This instruction was defective in two respects: it left out the question whether the representation was trusted and acted upon by the plaintiff, and also the question whether the deficiency in value was so great as to render the land inadequate security for the loan.

7. It is no cause for dismissing a motion for a new trial, that the brief of evidence, filed in due time under the approval of the court, consisted of a stenographic report of the trial, no motion being made to vacate the judgment and entry of approval. And it is competent at the hearing of a motion for a new trial to allow the document previously approved as a brief of the evidence to be amended even by substituting therefor a more condensed statement of its contents, together with additional matter improperly omitted from the document when it was approved as a complete brief.

> *Judgment on main bill of exceptions reversed.*
> *On cross-bill of exceptions affirmed.*

June 25, 1894.   Argued at the last term.

Equitable petition.   Before Judge Milner.   Gordon superior court.   February term, 1893.

The Equitable Mortgage Co. made a loan, through the Atlanta Trust & Banking Co., to B. W. and W. M. Cornelison and D. P. Cline, taking, as security for the loan, a deed to 990 acres of land in Gordon county, under the code, §1969 *et seq.* The note so secured having become due, under the terms of the contract, by default in the payment of interest, suit was brought against the borrowers, and was subsequently amended by making J. T. Lewis and his wife parties defendant. It was alleged, that said land was conveyed to the borrowers by Lewis shortly before the loan was made; that they represented on oath to plaintiff that they had bought it for $15,000 from Lewis, $8,000 cash and $7,000 when the loan was closed, which was false, the only consideration paid by them to Lewis, except a small piece of land worth less than $1,000, being the money procured of plaintiff; that they conspired with Lewis to defraud plaintiff by said false representations, so as to procure a loan of $8,062.50 on the land; that Lewis owned the land and applied to plaintiff for a loan on it, but being afraid it would not bear the loan he wanted, he resorted, in collusion with Cornelison *et al.*, to the artifice of a pretended sale to them on the terms named in said false representation to plaintiff; that the land conveyed by the security deed was not worth over $3,000 or $4,000, and defendants were insolvent and irresponsible; and that Lewis, having obtained the money loaned by plaintiff, invested it in land in Bartow county, withholding his deed from record, and returning this land for taxation in the name of his wife. Plaintiff prayed that this land be sold to make up the deficiency remaining after the sale of the Gordon county land covered by the security deed.

Lewis and wife answered severally, denying the main allegations of the petition, and all fraud and collusion; and setting up, in substance, that the equitable title to

the Gordon county land, while held by them, was in her as it was paid for with money of her separate estate; that it was most valuable, and well worth double the amount of the loan obtained upon it; that Mundy and Reed, agents sent by plaintiff, thoroughly examined said land, made their own valuation thereof, and recommended the loan; that the actual amount of money received by Cornelison *et al.* on the loan was only about $6,615, which they paid to Lewis for his wife, and which he reinvested in the Bartow county land on a contract of purchase for $10,000, taking a bond for title and afterward transferring it to his wife on her demand; etc.

The jury found for the plaintiff, with a special lien on the Bartow county land. Lewis and wife moved for a new trial, which was denied. The motion alleges that the verdict was contrary to law and evidence. Also, that the court erred in assuming, in the charge to the jury, that the facts alleged in the petition would entitle plaintiff to the relief sought, and that the fraud alleged had been proved. Also, in ruling out testimony of the father of Lewis, that a place swapped to the former by the latter for part of the Gordon county land was Mrs. Lewis's place, and testimony of Lewis that he "notified the inspector" that he was his wife's agent (defendants insisting that this inspector was plaintiff's agent, and that the testimony was relevant to show notice to plaintiff of the wife's equity). Also, in ruling out testimony that Fullerton and Mundy, agents of the Atlanta Trust & Banking Co., valued the Gordon county land at $22,-000 when they went over and inspected it. Also, that the court erred by instructing the jury that there was no evidence charging plaintiff with notice of any equity of Mrs. Lewis in the land; and in charging as shown by the sixth head-note.

The verdict was rendered and the motion for new trial made at the August term, 1892, and the court passed an

order allowing defendants 30 days in which to file a brief of the evidence. Within the 30 days, but after the adjournment of the August term, defendants filed, under the approval of the court, the stenographer's report of the testimony, including questions and answers, remarks, objections, rulings, and arguments of counsel, without abridgment or condensation, and without any portion of the documentary evidence or of the interrogatories read on the trial. When the motion came on to be heard at the February term, 1893, plaintiff moved to dismiss it for failure to file a legal brief of evidence within the time allowed. The motion was overruled; and defendants were allowed to file a document as a brief of evidence, in lieu of the original stenographer's report, over plaintiff's objection that the time had expired within which a brief of evidence could be filed. Plaintiff renewed the motion to dismiss, on the ground that the paper thus offered and filed was not a condensed and succinct brief of the material portions of the oral evidence. The motion was overruled, and plaintiff excepted by cross-bill.

W. H. DABNEY, J. C. FAIN, W. R. RANKIN, E. J. KIKER and O. N. STARR, for Lewis *et al.*

HALL & HAMMOND and W. J. CANTRELL & SON, *contra.*