JOHNSON, next friend, *v.* SOUTHERN STATES PHOS-
PHATE AND FERTILIZER COMPANY *et al.*

Under the evidence and pleadings in the case, the court did not err in
refusing an injunction.

No. 5418. OCTOBER 18, 1926.

Petition for injunction. Before Judge Hardeman. Emanuel superior court. March 18, 1926.

On June 9, 1922, H. H. Stewart gave to the Southern States Phosphate and Fertilizer Company a deed to secure a debt of

Mortgages, 27 Cyc. p. 1454, n. 85.

$2737.43, evidenced by four notes maturing Sept. 15, Oct. 1, Oct. 15, and Nov. 1, 1922; said deed containing power of foreclosure by public sale, after due advertisement, etc. Default having been made in the payment of the indebtedness, the Phosphate Company proceeded to advertise the property for sale on the first Tuesday in November, 1925, in pursuance of the powers conferred in the security deed. On November 2, 1925, H. G. Johnson obtained a restraining order against the sale. On March 8, 1926, an order was passed refusing an injunction and dissolving the restraining order, and the plaintiff excepted.

In the petition it was alleged, that Johnson was proceeding as next friend of Birdie Mae Stewart, a minor, against the Phosphate Company and H. H. Stewart; that the Phosphate Company was a Georgia corporation having its principal office in Richmond County; that Stewart was a resident of Emanuel County, where the suit was brought; that Stewart was the father and the guardian of the minor, but refused to act in her behalf; that the minor was the only child of Mrs. Kate Stewart, who died on February 20, 1915, and at that time the minor was four years of age; that prior to her death Mrs. Stewart made a deed of her real property to said minor, and bills of sale to her personal property, and the minor was the owner in fee simple of all the estate of Mrs. Kate Stewart, including 180 acres of land in the 1429th district of Emanuel county; that H. H. Stewart had been in complete charge of the minor's estate, handling it as his own property; he made investments, etc., from the profits of the minor's estate, took titles in his own name, and had never made any returns as guardian; that Stewart owned two or three tracts of land which he cultivated, and before 1919 he was successful in his operations, but in 1919 he suffered losses and gave deeds to secure debts on said farms; that for the payment of the debts he used funds and property belonging to the minor's estate; that the minor was the owner in fee simple of lots of land lying in the town of Garfield, No. 3, No. 4, and No. 7, each lot being 30 feet wide and 85 feet deep, the same having been purchased with funds belonging to her estate and the title thereto standing in the name of Stewart; that on June 9, 1922, Stewart executed a security deed to the Phosphate Company for more than $2700, for fertilizer purchased in the year 1921 for use on the farms owned by him, and particularly on the farm

located in the 1640th district; that in 1920 and thereafter Stewart lost heavily and became insolvent; and in order to have suit withheld he executed the security deed to the Phosphate Company, knowing that the property belonged to said minor.

The petition alleged, upon information and belief, that Stewart and the Phosphate Company, on or about June 9, 1922, entered into a "scheme and conspiracy" to use the property of the minor in paying or securing the debt of Stewart; that both Stewart and the Phosphate Company knew that the lots and store in Garfield, covered by the security deed, were the property of the minor; that the security deed was the result of a "scheme and conspiracy" between the parties for the purpose of defrauding Birdie Mae Stewart of said property; that the Phosphate Company aided and assisted Stewart and induced him, in the furtherance of that scheme, to misapply the assets and property belonging to the minor; that the security deed was a cloud upon the minor's title, and should be cancelled; that the purchase-money of the property described in the security deed was the property of the minor and represented funds and assets from the rents, profits, and issues of the property conveyed to her by her mother; that Stewart was insolvent; that in continuance of the scheme and conspiracy, the Phosphate Company was having the property advertised for sale on the first Tuesday in November, in accordance with the powers purporting to be granted in the deed; that petitioner was seeking to avoid a multiplicity of suits; that he had no adequate remedy at law; that Stewart never made any returns, or accounted for any of his actings, and he should be required to make an accounting to the court. The prayers were, that Stewart be required to make accounting and return as guardian; that the Phosphate Company and Stewart be enjoined from any further act to sell the property in question; that the title be decreed to be in Birdie Mae Stewart or her guardian; that the security deed be declared null and void and removed as a cloud upon her title; and for such other relief as the court might see fit.

The Phosphate Company filed its plea to the jurisdiction, its demurrer to the petition, and its sworn answer on the facts. It denied any knowledge on the part of the company, or any of its officers, of any ownership or interest of said minor child in the property embraced in the security deed; and alleged that it be-

lieved that the property did belong to H. H. Stewart, in whose name it stood on the records. The only affidavit made to the original petition was by H. G. Johnson, who swore "that the said bill is true as to the facts alleged of his own knowledge, and those upon information and belief he believes it to be true."

At the hearing John W. Johnson made affidavit, among other things, "that during 1910, and especially before that year, the said Mrs. Stewart expressed a desire to provide for the future welfare of her only daughter, Birdie Mae Stewart, a minor;" that she had decided to invest some money she had accumulated for her daughter; and in the year 1910 Mrs. Stewart did purchase a business lot in the town of Garfield, and the next year erected a modern brick building upon it, consisting of two stores. Joe B. Hall made affidavit that Mrs. Stewart gave the management of her estate to her husband, H. H. Stewart; that she was the owner of a farm which she obtained from her father, Kin Johnson, by deed of gift; that during the year 1910, and especially before that year, she proposed to erect a store building in Garfield for her daughter, Birdie Mae Stewart, and did purchase a lot and build such building thereon.

H. G. Johnson, the plaintiff, made affidavit in substance as follows: "Deponent alleges upon information and belief, and he thoroughly believes the same to be true, that the said Mrs. Kate Stewart gave to her daughter, Birdie Mae Stewart, then a minor child of tender years, a sum of money aggregating $5,000 and other large sums; and that the said Stewart, acting as her agent then and in behalf of said child and at the specific direction of said mother, purchased a lot and erected a brick store thereon, said property now being in controversy in this suit; and that it was the intention of the mother, well known to said Stewart, to invest said gift of $5,000 in said store, and. take title in the name of the child. That upon 'information and belief' there was 'a scheme of conspiracy' entered into between H. H. Stewart and the Phosphate Company on June 9, 1922, when said Stewart executed the deed. . . That it was their scheme and plan to defraud the said Birdie Mae Stewart out of the property named in said deed, each of said parties having full knowledge of the fact that the said Mrs. Kate Stewart, in 1910, gave her said daughter the sum of $5,000 and other large sums, for the sole benefit and use of

said child; and that the same was afterwards invested in said lot of land and the improvements erected thereon by said Stewart; and that H. H. Stewart wilfully and knowingly took title to said property in his own name, instead of that of his daughter. . . That said H. H. Stewart owns about 400 acres of farm lands located in the 1640th district of Jenkins County, and another farm of about 200 acres in the 1469th district of Emanuel County, and has other property."

H. H. Stewart introduced his answer, duly verified, and in part as follows: "This defendant says he is now indebted to said Southern Phosphate & Fertilizer Company in the sum of about ————, the original amount of which was more than $2700.00, representing a purchase-price of commercial fertilizers purchased from said company for the purpose of making crops upon his farms in the year 1920, and as evidenced by defendant in his notes to said company, which were past due at the time defendant executed the deed to secure debt over the lot and brick store building, that the said Southern States Phosphate & Fertilizer Company was pressing this defendant for settlement, and on account of failure of his crops since the year 1920 he had been unable to pay them at the time he executed the said deed to secure debt. That the said Fertilizer Company threatened to sue him, and insisted that he either pay the debt or secure the same in some manner, otherwise they would file suit against him; and this defendant, being in the mercantile business at that time, realized that it would not do for a suit to be filed against him, and he endeavored to get said Fertilizer Company to withhold suit and carry said note for another year, but they refused to do so; that Mr. F. E. Fleming, an officer of said Fertilizer Company, came to see this defendant at Garfield, arriving there in the morning and spending practically all the day, threatening and trying to persuade this defendant to give him some kind of security to the debt in question; but this defendant, not desiring to give this creditor any preference over other creditors that he owed at that time, insisted that he could not do so; and finally Mr. Fleming, representing the Fertilizer Company, suggested to this defendant that he give this company a deed to secure debt over the property in question, it being unencumbered, but defendant declined to do so; this defendant, however, did offer to give said company a

crop mortgage on 420 acres of his growing crops in that year as security for said debt, which offer was also declined by said company; said Fleming remained in Garfield until late in the afternoon, and continued his efforts to persuade this defendant to give him a mortgage or deed to secure the debt in question, but this he declined to do; finally, late in the afternoon said Mr. Fleming, desiring to reach the main line of the Central of Georgia railroad, the nearest point being Midville, requested this defendant to carry him to Midville, and upon the way to Midville he again insisted that this defendant give him a deed to secure debt over the brick store building and lot, and suggested to this defendant that there would never be any harm or any after results or trouble by reason of the giving of such deed to secure debt; and it was finally agreed between this defendant and said Mr. Fleming as representative of said Southern Phosphate & Fertilizer Company that if he would give this deed over said property and a crop mortgage on the crops grown on 420 acres in 1922, on land in the 1640th district of Jenkins County, he would take such security and would not sue the notes, and that said company would not put said deed to secure debt on record, and would never attempt to enforce the deed; and with this agreement in view this defendant agreed to execute the deed and did execute it at Midville, Georgia. This defendant stated to Mr. Fleming that he would not consent to give this deed over said property, because it was not his property, but that of his minor child, Birdie Mae Stewart, and so advised Mr. Fleming representing said Fertilizer Company, and said Mr. Fleming understood these facts in all of this negotiation, and agreed that he could not get a good title thereto, and agreed that in right and justice the property was the property of said child."

The defendant company introduced a number of letters from Stewart, which ranged in dates from June 8, 1922, to October 5, 1925, from none of which does it appear that Stewart intimated that the property in the security deed did not belong to him. Nor does it appear from these letters that Fleming, who negotiated the transaction with him, had any knowledge whatever that Stewart pledged as his own property which belonged to his daughter. In the plea to the jurisdiction, which is sworn to positively by Fleming, it is positively denied that he had any knowledge whatever of

the property in the town of Garfield being the property of the minor child or of any one except Stewart himself. Knowledge of the alleged ownership of the property by any one other than Stewart is denied positively in the answer sworn to by the president of the company, and all conspiracy is denied, and the denial positively sworn to by Fleming and by the president of the company.

*A. S. Bradley* and *Guy Alford,* for plaintiff.

*William H. Fleming* and *Humphrey & Edenfield,* for defendants.

BECK, P. J. (After stating the foregoing facts.) We are of the opinion that the court did not err, under the pleadings and the evidence in the case, in refusing an interlocutory injunction. The evidence was conflicting upon material issues; and where that is the case, the grant or refusal of an interlocutory injunction is one for the sound discretion of the trial court, and its judgment will not be reversed unless that discretion has been abused. If it be conceded in the present case that it is established beyond controversy that H. H. Stewart bought the property in question with trust funds—funds which had been turned over to him by his wife, Mrs. Kate Stewart, the mother of Birdie Mae Stewart, and that with these funds he purchased the property and took the title in his own name, when it was his duty to have taken the title in the name of the owner of the equitable interest, Birdie Mae Stewart, nevertheless there was evidence from which the court could find that this property remained, from the time of the purchase up to the time when this suit was filed, a period of several years, in the name of H. H. Stewart. The deed of conveyance was made to him, and the court was authorized to find that no notice of the real ownership of this property was in Birdie Mae Stewart; that while the legal title was in H. H. Stewart, the equitable title was in his daughter; that it had been purchased with trust funds. It is true that petitioner submitted evidence tending to show that the agent of the Phosphate Company did have knowledge of the real state of the title. H. H. Stewart testified to this positively, and there is other evidence to corroborate his statement. But Frank E. Fleming makes positive affidavit as a part of the pleadings in this case, in which he denies that he had any intimation as to the character of the title of H. H. Stewart

to the property or of his daughter's equitable interest. The charge of fraudulent understanding and conspiracy was denied positively by Frank E. Fleming and by Porter Fleming, the president of the Phosphate Company; and there are proved circumstances tending to corroborate their testimony. In view of all these facts and other facts which it is not necessary to summarize, we are of the opinion that the court was authorized to find against the petitioner upon the issue as to whether or not the defendant or its agents had any knowledge of the equitable title of Birdie Mae Stewart to the lands in controversy; and this was the controlling issue. In *Parker* v. *Barnesville Savings Bank,* 107 *Ga.* 650 (34 S. E. 365), it was said: "Section 3934 of the Civil Code declares that 'A bona fide purchaser for value, and without notice of an equity, will not be interfered with by a court of equity.' This doctrine proceeds upon the idea that the equity of the innocent purchaser is superior to that of the cestui que trust, who stands silently by and permits such purchaser to act to his prejudice, or who is guilty of laches in not sooner asserting a mere secret equity. It follows that as soon as a purchaser from the husband acquires his legal rights, the cestui que trust loses all claim to the property so purchased; and such purchaser can not be compelled to litigate with, or in any way recognize, the cestui que trust as having any rights or interests in the premises. Indeed, the only footing the latter has, after a sale, is the limited privilege of showing that the purchaser was not acting bona fide, but had notice of and therefore bought subject to the secret equity. A petition for relief on any other ground is not maintainable; for, after a bona fide sale, the holder of the secret equity is effectually cut off from asserting any claim whatsoever. It matters not if he offers to do equity by returning the purchase-price with interest and otherwise making the purchaser whole. The purchaser is entitled to his bargain, if made in good faith, and can not be disturbed in his possession, no matter what equitable arrangement the holder of the secret equity proposes as affording protection to all the parties concerned. In a word, a bona fide purchaser without notice acquires an unqualified legal right and title to the property purchased, and a court of equity has no jurisdiction to interfere with such vested legal right and title. A mortgagee who in good faith parts with his money, in ignorance that a person

other than the holder of the legal title has a secret equity in the mortgaged property, stands precisely in the attitude of a bona fide purchaser, and is entitled to the same protection. See *Thrasher* v. *Parlee,* 37 *Ga.* 392; *Lane* v. *Partee,* 41 *Ga.* 202; *Sumner* v. *Bryan,* 54 *Ga.* 614; *Lewis* v. *Mortgage Co.,* 94 *Ga.* 573 [21 S. E. 224]." What is there said renders further citation and discussion unnecessary.

Having held that the judge did not err in dissolving the injunction, the decision upon the question as to the jurisdiction of the superior court of Emanuel County is not necessary, even if it would be proper under the sole assignment of error complaining of the refusal to grant an interlocutory injunction.

*Judgment affirmed. All the Justices concur.*