33509. CLOUD *v.* BAGWELL.

DECIDED APRIL 25, 1951.

*Henderson & Burtz,* for plaintiff.

*H. G. Vandiviere, H. L. Buffington Jr.,* for defendant.

TOWNSEND, J. (After stating the foregoing facts.) ■ Counsel for the plaintiff contends that the demurrers were erroneously overruled because the defendant was estopped to deny that, by making a check to the plaintiff's wife at the then current market price of 32 cents per pound he accepted the defendant's version of the contract and, to avoid controversy, acknowledged her right to the 2300 chickens. It is well stated in *Gibson* v. *Alford,* 161 *Ga.* 672 (5) (132 S. E. 442) that, "If a party to a contract seeks to avoid it on the ground of fraud or mistake, he must, upon discovery of the facts, at once announce his purpose and adhere to it. Otherwise he cannot avoid or rescind such contract." The difficulty here is that neither party had any desire to rescind the contract at any time, but each insisted upon carrying out the contract according to its terms as contended for by him. The defendant alleged in effect that the contract embraced 3300 chickens, or so many of them as were living at maturity; that this number of chickens was actually released to him by the plaintiff; that he offered to pay the amount due under the contract; that to avoid controversy he paid this sum in two checks, one, at plaintiff's direction, being made directly

to the wife for a sum equivalent to the amount claimed by her at the market price, and the balance tendered directly to the plaintiff. A creditor, by directing the manner in which funds due him should be disbursed, may make the debtor his agent for this purpose. The defendant was contending that he owed the plaintiff a total of $2362.64 for 8438 pounds of chickens at 28 cents per pound. At the plaintiff's direction he paid, according to the allegations of his answer, $2043.52 of this money for the benefit of the plaintiff's wife. He had already paid $100 to the plaintiff and this left a balance which he contends he owed of $219.12, which sum he tendered the plaintiff and thus completed his obligations.

An estoppel arises where a party has so acted that he has by his conduct either gained some advantage for himself or caused some disadvantage to accrue to another, by reason of which it would be contrary to equity and good conscience to permit him thereafter to allege and prove the truth. *Davis* v. *Auerbach*, 78 *Ga. App.* 575 (51 S. E. 2d, 527), *Goodwyn* v. *Goodwyn*, 20 *Ga.* 600. Payment of the amount he admitted to be due under the contract constituted no such advantage to the defendant or disadvantage to the plaintiff (it being done at his direction) as to give rise to an estoppel. A voluntary payment is one made by a mere volunteer who pays money to another while under no legal obligation to do so or compelled to preserve some right or property of his own thereby. *Hill* v. *Shaw*, 62 *Ga. App.* 757 (1) (9 S. E. 2d, 850). The payment here, as has been pointed out, was not a voluntary payment by the defendant of the plaintiff's alleged debt to his wife, but was a payment to the defendant, made out to a third person under his direction. Nor did it constitute a new agreement between the parties, extinguishing the original contract, in the absence of a specific agreement between them to that effect at that time. See Code, § 20-1201. The demurrers raising these points were properly overruled.

A ground of special demurrer to the answer complains that the alleged tender did not amount to a legal tender because the same was in the form of a check. However, this ground is not argued in the brief of counsel and is treated as abandoned.

■ The first ground of the amended motion complains of the

exclusion of the following testimony offered by the plaintiff: "I told the hatchery man that brought the chickens where to put them, that the 2300 were to go in this house, that they were my wife's, and 1000 were to go in the other house." It is contended that the statement constituted notice to the defendant's agent that at the time of purchase only 1000 chickens belonged to the plaintiff, and that it therefore constituted implied notice of this fact on the part of the defendant. Code § 4-309 holds as follows: "Notice to the agent of any matter connected with his agency shall be notice to the principal." However, where the person receiving notice is not the agent of the adverse party, or when the notice is on a matter in no wise connected with his agency, no implication that the party has received such notice arises. See *Tidwell* v. *Hines,* 28 *Ga. App.* 806 (4) (113 S. E. 48) ; *Lewis* v. *Equitable Mortgage Co.,* 94 *Ga.* 572 (4) (21 S. E. 224) ; *Dawson* v. *Briscoe,* 97 *Ga.* 408 (3) (24 S. E. 157). Here the person who delivered the chickens was an employee of Gainesville Hatcheries, from whom the defendant had purchased the chickens with instructions that they be delivered to plaintiff. He was acting for Gainesville Hatcheries in the matter of delivery. Without proof that the statement was actually communicated to the defendant, he would not be in any way bound thereby. On objection that this statement amounted to a self-serving declaration, it was properly excluded. *Flournoy & Epping* v. *Williams,* 68 *Ga.* 707; *Williams* v. *English,* 64 *Ga.* 546. The first ground of the amended motion for a new trial is without merit.

■ The plaintiff further contends that the trial court erred in charging the jury as follows: "And the defendant contends that he was compelled to pay the wife 32 cents per pound and did pay her 32 cents per pound for those chickens." The jury could not reasonably have been confused or misled by this statement as to the defendant's contention, for whether the defendant contended that he was "compelled" in the legal sense of the use of force and duress or not, it is perfectly clear that he. made out the check in question at the plaintiff's insistence and contended that he had done so, and the charge must have been so construed by the jury. It appears from the evidence that the defendant was engaged in the business of buying chick-

ens. The court no doubt meant for the jury to imply from this statement as to the defendant's contentions that it was necessary, in order to procure the chickens, to buy them at the prevailing market price instead of the contract price.

■ Code § 96-101 holds as follows: "Three elements are essential to a contract of sale: 1. An identification of the thing sold. 2. An agreement as to the price to be paid. 3. Consent of the parties." There is no dispute but that the parties agreed that the article to be sold was some number of chickens; that the price to be paid was 28 cents per pound, and that the parties agreed to buy and sell. On February 22nd, when the contract was made, neither one apparently stated to the other the exact number of chickens involved, but both knew they were talking about the lot of baby chicks which the plaintiff had previously purchased from the defendant, that this consisted of 3300 fowl, and that some of these would die in the process of being raised. The plaintiff does not contend that the defendant at this time had any reason to believe otherwise than that title to the chickens which the plaintiff had purchased remained in him. "Whether the minds of the vendor and vendee met as to the purchase-price of the article sold was purely a question of fact" for the jury. *Dickson* v. *Davis & Freeman Inc.*, 19 *Ga. App.* 24 (90 S. E. 738). In like manner, the question of whether the minds of the vendor and vendee met as to an identification of the thing sold is entirely a jury question. Therefore, the question here as to whether the parties agreed on the sale of that portion of the 3300 chickens which would remain alive until they were ready for the market, or whether they agreed on 1000 chickens, which the plaintiff contends was all he owned at the time of the contract, is a jury question. In determining that question, the jury was authorized to consider the facts that the whole 3300 lot was sold six weeks previously by the defendant to the plaintiff, evidenced by a single cash sale ticket; also the fact that at the time of making the contract the plaintiff specifically pointed out that this contract was not to include the boy's chickens, to which the defendant replied that he was assuming that, as the boy's chickens constituted an entirely different charge, thus implying that all the chickens of the 3300 lot were included; also the fact that at the time of entering into the

contract one of the bystanders stated in substance to the plaintiff in the defendant's presence that he had made a bad trade, and that he would like to sell him 40,000 or 50,000 chickens under the same arrangement, to which the defendant replied in substance that while he would not undertake to go that deep in the future market of chickens he was satisfied with his trade with the plaintiff which involved approximately only 3000 chickens; also the fact that when the defendant came for the chickens the plaintiff for the first time stated his position that 2300 of the chickens belonged to his wife, which was stated in these words: "I don't know how you feel about this, but I sold this big house of chickens to my wife and they belong to her." This last statement authorized the jury to conclude that the plaintiff had known all along that the contract was for 3300 chickens.

The jury being authorized to find that the plaintiff contracted to sell the defendant these 3300 chickens or so many thereof as remained alive at maturity, the defendant could not defeat the terms of this contract on the theory that, at the time he made it, a part of the chickens were not his. See *Northington-Munger-Pratt Co.* v. *Farmers Gin & Warehouse Co.*, 119 *Ga.* 851 (2) (47 S. E. 200); *Sanders* v. *Allen*, 135 *Ga.* 173 (3) (68 S. E. 1102). It follows that whether the chickens at the time of making the contract belonged to the plaintiff or his wife, or part of them belonged to one and part to the other, the contract was a binding one and gave rise to a cause of action in damages for its breach.

On the question of whether a part of these chickens actually did belong to his wife or not, the jury was authorized to take into consideration the check by which the wife purported to pay the plaintiff for the chickens, it having been dated January 5 and cashed on March 9.

The jury having been authorized by the evidence to find the contract and its breach on the part of the plaintiff in accordance with the contentions of the defendant, a proper measure of damages is the difference between the contract price and the market price for any chickens not delivered in accordance with the terms of the contract. *Southern Cotton-Oil Co.* v. *Adams*, 69 *Ga. App.* 88 (24 S. E. 2d, 719); *Huggins* v. *Southeastern Lime*

& *Cement Co.*, 121 *Ga.* 311 (48 S. E. 933). The verdict in favor of the plaintiff for $219.12 which represents the part of the purchase-price of the chickens remaining unpaid is authorized by the evidence. The judgment of the trial court overruling the demurrers of the plaintiff to the defendant's answer and overruling the motion for a new trial as amended is without error.

*Judgment affirmed. MacIntyre, P.J., and Gardner, J., concur.*