A92A1398. JOHN McDONALD PONTIAC-GMC TRUCK, INC. v. KLOPPER.

(422 SE2d 925)

McMURRAY, Presiding Judge.

On March 31, 1989, Dr. Jeffrey Klopper purchased a silver Alfa Romeo automobile with an automatic transmission from John McDonald Pontiac-GMC Truck, Inc. ("John McDonald") for $14,700. The purchase price was to include an extended warranty and a special undercoating for the automobile.

Klopper wanted another Alfa Romeo with a manual transmission but he was told by John Miraglia, one of John McDonald's sales representatives, that John McDonald did not have the automobile that plaintiff wanted in stock. To smooth things over, Miraglia agreed that Klopper could subsequently exchange the Alfa Romeo for another automobile, "if the terms were agreeable" and Klopper was willing to make an additional payment.

Klopper gave John McDonald a check for the full purchase price of the Alfa Romeo. However, at John McDonald's request, Klopper signed papers to finance the Alfa Romeo with a bank and John McDonald held Klopper's check without cashing it.

Klopper did not make payments to the bank and, in time, he received letters from the bank demanding payment. Having given John McDonald a check for the automobile, Klopper did not understand why he was being dunned by the bank. He was told that John McDonald would take care of the problem — but it never did. Ultimately, Klopper was forced to pay the bank principal and interest

totalling $16,055.15.

John McDonald returned Klopper's $14,700 check after Klopper paid off the bank. In all likelihood, John McDonald received a premium for the financing of the automobile.

Klopper was not pleased with the automobile from the start. Problems showed up immediately. For example, the heater was stuck in the "on" position and the brake warning light did not function properly. These problems were eventually fixed by John McDonald; however, other problems remained. For example, condensation was continuously building up in the headlights. Moreover, according to Klopper, the special undercoating was never applied to the automobile even though it was included in the purchase price and Klopper asked John McDonald to apply it many times.

Klopper was not satisfied with John McDonald's attempts to repair the automobile either. In an attempt to remedy the condensation problem, for example, John McDonald did nothing more than blow dry and wipe the headlights. Moreover, it took John McDonald four or five weeks to repair a dent in the rear pillar of the automobile.

Klopper brought the automobile to another dealership for repair work under the extended warranty. At that time, Klopper learned that there was no extended warranty covering the automobile. It would appear that John McDonald had cancelled the warranty and had received a refund for the cancellation.

On December 1, 1989, Klopper's attorney wrote a letter to John McDonald in which he pointed out the many problems Klopper experienced after purchasing the Alfa Romeo. He concluded the letter thusly: "You need to provide Dr. Klopper a functioning automobile meeting the description of the automobile you originally promised. Please contact me so we can resolve the situation. If we do not hear from you by Friday, December 8, 1989, we will take the appropriate action."

Thereafter, on February 22, 1990, Klopper brought suit against John McDonald. In his complaint, Klopper sought damages for breach of contract in the amount of "at least $18,000." He also sought reasonable attorney fees, alleging defendant was stubbornly litigious. He did not seek rescission.

At trial, Klopper testified that he wanted to get back the money he paid for the Alfa Romeo; in turn, he said he would give the automobile back to John McDonald. He testified that he asked Miraglia "to take back" the Alfa Romeo "several times." But he also testified that he offered to exchange the Alfa Romeo for another automobile on many occasions and added that he never asked for anything more than a "resolution of the problem."

John McDonald moved for a directed verdict, arguing, inter alia, that the evidence did not support a claim for rescission. The trial

court denied the motion. Following the close of the evidence, the trial court charged the jury, over John McDonald's objection, on the law of rescission. The jury returned a plaintiff's verdict for $16,055.15 and attorney fees, adding "return the car to dealer." In its judgment, the trial court awarded Klopper $16,055.15, attorney fees and costs, and ordered Klopper to return the automobile to John McDonald. This appeal followed. *Held*:

"Forfeitures of rights under valid legal contracts are not favored under the law. Our courts generally are quick to seize upon any waiver of a forfeiture, the rule being that the right to rescind for any breach must be asserted promptly, and a waiver of a breach or forfeiture can not be recalled. [Cits.]" *Pearson v. George*, 209 Ga. 938, 945-946 (77 SE2d 1). Thus, " 'If a party to a contract seeks to avoid it on the ground of fraud or mistake, he must, upon discovery of the facts, at once announce his purpose and adhere to it. Otherwise, he cannot avoid or rescind such contract.' " *Cloud v. Bagwell*, 83 Ga. App. 769, 772 (64 SE2d 921) (quoting *Gibson v. Alford*, 161 Ga. 672 (5) (132 SE 442)).

In the case sub judice, Klopper did not announce a rescission of the contract until the case was tried. He testified that, until the time of trial, he only wanted to resolve the situation. Compare *Bob Maddox Dodge v. McKie*, 155 Ga. App. 263 (270 SE2d 690). At no point did Klopper plainly and firmly state an intention to rescind before he took the witness stand. True, Klopper testified that he asked Miraglia to "take back" the Alfa Romeo "several times." But it is not clear whether such requests were made in conjunction with a demand for rescission or in conjunction with Klopper's contractual right to "exchange" the Alfa Romeo for another automobile. See generally *DeLoach v. General Motors*, 187 Ga. App. 159, 161 (6) (369 SE2d 484).

Even if it can be said that Klopper's "take back" requests amounted to a rescission, it is clear that Klopper did not adhere to any requests to rescind. On the contrary, in his December 1, 1989 letter, Klopper's attorney sought another automobile, not rescission. And in his complaint, Klopper sought damages for breach of contract, not rescission. Thus, any requests to rescind the contract were waived and Klopper could not recall them at the time of trial. *Pearson v. George*, 209 Ga. 938, 945, 946, supra.

As to the issue of whether or not rescission is involved in the case sub judice, the trial court erred in failing to grant John McDonald's motion for a directed verdict on this issue and in charging the jury on the law of rescission, because the evidence did not support a claim for rescission. To meet the ends of justice under the facts of this case, however, a new trial should be had. See OCGA § 9-11-50 (e).

In view of our ruling on the rescission issue, we need not address

the remaining enumerations of error.

*Judgment reversed. Sognier, C. J., and Cooper, J., concur.*

DECIDED SEPTEMBER 29, 1992.

*Summers & Jones, Ezra B. Jones III, Robert H. Stansfield*, for appellant.

*Gary P. ·Bunch*, for appellee.