**UNITED STATES of America, Plaintiff,**

v.

**Barbara K. SPEIR, Defendant.**

**No: CV 491–246.**

United States District Court,
S.D. Georgia,
Savannah Division.

Dec. 2, 1992.

Sean O'Connor, Trial Atty., Tax Div., U.S. Dept. of Justice, Washington, DC, Lawrence B. Lee, Savannah, GA, for plaintiff.

Alvin M. Hitt, Jr., Savannah, GA, for defendant.

## ORDER AND MEMORANDUM

NANGLE, District Judge.

This action was brought to collect the balance owed on a promissory note given to a delinquent taxpayer, Spence, by the defendant, his wife, for the sale of certain realty. The issue presented at trial was whether the defendant satisfied her debt to Spence by providing his mother with a rent-free apartment and by paying approximately $6,024.26 on Spence's behalf prior to a tax levy. After consideration of the pleadings, the testimony of witnesses, and the exhibits at trial, the Court makes the following findings of fact and conclusions of law.

## FINDINGS OF FACT

1. Defendant Barbara K. Speir is the wife of taxpayer Barry Spence. Spence owes federal income tax liability in excess of $100,000.00 as a result of his 1976 and 1977 tax returns.

2. On December 14, 1983, defendant executed a deed to secure debt and a promissory note for $13,974.99 plus 10% interest payable to Spence as consideration for apartment buildings purchased by defendant from him. The note was payable in consecutive monthly installments of $184.68, beginning February 1, 1984, and ending no later than February 1, 1994.

The defendant has never made any payments to Spence on the note. As of December 1, 1992, the principal and interest accrued on the note totalled $19,576.08. The loan value over its ten-year life is $22,161.60.

3. Between January 1984 and November 1991, defendant furnished her mother-in-law with a rent-free apartment in the property that she bought from her husband. Defendant claims that she had a verbal agreement with Spence to furnish his mother with rent-free housing for the rest of his mother's life, and that they intended for this arrangement to satisfy defendant's obligation under the promissory note. Spence's mother lived in that apartment for 88 months; given a fair rental value of $150.00 per month, defendant estimated that she furnished $13,200.00 in free housing.

4. Between 1984 and 1988, defendant claims to have made a total of $6,024.26 in payments to Spence's creditors. Pamela O'Quinn, a certified public accountant, testified that she arrived at this amount while working on past due tax returns for defendant.

a. Defendant hired O'Quinn in July 1990 to prepare her tax returns for the years 1983 through 1989.

b. Since defendant kept poor records, O'Quinn instructed defendant to go through her checkbook and bank statements to analyze her checks and deposits.

c. On the return work sheets, defendant separated checks written on behalf of her husband. O'Quinn asked about, but did not review, defendant's determination that checks were written on behalf of Spence. Payments made on behalf of Spence were not reflected on defendant's returns since defendant was married filing separately.

d. The 1983 and 1984 returns were audited by the I.R.S., but the agent agreed that O'Quinn's suggested method was a plausible way of return preparation in this instance.

5. On April 4, 1986, defendant executed a subordination agreement, which allowed Spence to subordinate the deed to secure debt to any new loans.

6. In August 1986, the United States made an assessment for the taxes owed by Spence. By virtue of that assessment, federal tax liens arose and attached to all property and rights to property belonging to Spence on that date or acquired after that date.

7. On October 24, 1986, Spence under oath presented a financial statement to the Department of Justice indicating that the entire principal amount of the loan remained outstanding.

8. The United States filed a Notice of Federal Tax Lien in Bryan County, Georgia, in July 1987.

9. On May 25, 1989, Deborah Harper—a Revenue Officer in the Savannah, Georgia, office of the Internal Revenue Service—served defendant with a Notice of Levy to collect a portion of Spence's unpaid income tax liabilities.

a. Defendant told Harper that she refused to pay any of Spence's liabilities since she had previously paid off three $5,000.00 notes that Spence owed to Pembroke State Bank.

b. Harper investigated defendant's claim, and discovered that the three $5,000.00 notes had been paid off prior to the December 14, 1983, transaction.

c. At the time Harper served the Notice of Levy, defendant never mentioned any arrangement with Spence to provide a rent-free apartment to his mother as payment in full for the promissory note.

10. Final demand was made on June 27, 1989, but defendant has refused to honor the levy.

11. The deed to secure debt was duly canceled in the records of Chatham County on November 12, 1991. This action appears to have been taken solely in response to the United States' collection activities.

## CONCLUSIONS OF LAW

The issue currently before the Court is whether defendant is entitled to equitably setoff the provision of a rent-free apart-

ment to her mother-in-law and payment of certain debts owed by her husband from the amount due under the December 14, 1983, promissory note. This Court has jurisdiction over the present matter. pursuant to 26 U.S.C. § 7402, 28 U.S.C. § 1340, and 28 U.S.C. § 1345.

■ A tax lien arises in the following manner:

> If any person liable to pay any tax neglects or refuses to pay the same after demand, the amount (including any interest, additional amount, addition to tax, or assessable penalty, together with any costs that may accrue in addition thereto) shall be a lien in favor of the United States upon all property and rights to property[1], whether real or personal, belonging to such person.

26 U.S.C. § 6321. The Secretary of the Treasury may collect unpaid taxes by levy on any property belonging to the delinquent taxpayer or upon which there is a tax lien. 26 U.S.C. § 6331(a). Any person in possession of property or rights to property upon which a levy has been made must surrender that property to the Secretary. 26 U.S.C. § 6332(a). In a levy proceeding, the I.R.S. acquires whatever rights the taxpayer possessed. *United States v. Central Bank of Denver*, 843 F.2d 1300 (10th Cir.1988).

■ If the taxpayer's property is held by another, the I.R.S. customarily serves a notice of levy upon the custodian. *United States v. National Bank of Commerce*, 472 U.S. 713, 105 S.Ct. 2919, 86 L.Ed.2d 565 (1985). This notice not only gives the I.R.S. the right to all property levied upon, it creates a "custodial relationship" between the third party and the I.R.S. so that the United States has constructive possession of the property. *Id.* at 720, 105 S.Ct. at 2924. If the custodian refuses to surrender property subject to levy, she becomes personally liable to the United States for the value of the property. 26 U.S.C. § 6332(d)(1). Two defenses are available to the holder of the property, however: 1) the custodian is not in possession of or obligated with respect to the taxpayer's property, or 2) the property is subject to prior judicial attachment or execution. *National Bank*, 472 U.S. at 721–722, 105 S.Ct. at 2924–25; *see also* 26 U.S.C. § 6332(a).

■ To determine the nature of the taxpayer's interest in property held by third parties, the Court must look to state law. *United States v. Metropolitan Life Ins.*, 874 F.2d 1497 (11th Cir.1989); *see also National Bank*, 472 U.S. at 724, n. 8, 105 S.Ct. at 2926 n. 8. If a delinquent taxpayer has rights in the property, federal law determines whether the custodian must surrender that property to the I.R.S. *Id.*

Defendant relies on the first defense available to a custodian of the taxpayer's property. She claims that she satisfied her debt to Spence by providing her mother-in-law with a rent-free apartment from January 1984 to November 1991 and by paying debts that Spence owed to certain creditors. As a result, defendant argues that the value of these transfers should be setoff from the debt that she owed to Spence pursuant to O.C.G.A. § 23–2–76 (1982).[2] *See* Pretrial Order, ¶ 13, June 15, 1992.

Georgia's equitable setoff statute provides no relief where one is a mere volunteer. *See* O.C.G.A. § 23–2–33 (1982) ("Equity will not interfere to relieve against accidents or mistakes of mere volunteers ..."). No right to setoff exists where one makes a voluntary payment. *Ryder Truck Rental, Inc. v. Insurance Co. of N. Am.*, 142 Ga.App. 408, 236 S.E.2d 146 (1977) (voluntary payment made where party settled verdict with a $21,000.00 payment but had no judgment rendered against it and had no liability under insurance contract where amount less than $25,000.00). A

---

**1.** A property interest subject to attachment by a federal tax lien is one that "represents an economic asset in the sense that it has pecuniary worth and is transferable, so that a claim can be enforced against it." *Little v. United States*, 704 F.2d 1100, 1106 (9th Cir.1983).

**2.** O.C.G.A. § 23–2–76 provides as follows: "Regarding a setoff, equity generally follows the law; but, if there is an intervening equity not reached by the law or if the setoff is of an equitable nature, equity shall take jurisdiction to enforce the setoff."

voluntary payment is "one made by a mere volunteer who pays money to another while under no legal obligation to do so or compelled to preserve some right or property of his own thereby." *Cloud v. Bagwell*, 83 Ga.App. 769, 64 S.E.2d 921, 925 (1951); *see also Cochran v. Carpenter*, 119 Ga.App. 235, 166 S.E.2d 615 (1969) (son's payment characterized as voluntary where mother paid bills of decedent from her checking account, checks were returned and mother executed note to secure checks, and son borrowed money to pay off mother's note). The key inquiry in the case at bar is whether defendant had an obligation to provide rent-free housing for her mother or to satisfy certain debts of her husband.

■ Defendant has the burden of showing non-ownership by Spence as a defense. *See Flores v. United States*, 551 F.2d 1169, 1174 (9th Cir.1977) (this result appropriate since "purpose of the statute is a coercive one which seeks to foster swift tender of property which has been levied upon"); *United States v. Badger*, 930 F.2d 754 (9th Cir.1991) (under 26 U.S.C. § 6331, inappropriate to put burden on government to show that the property belongs to the taxpayer before it can levy upon the property); *United States v. Capital Sav. Ass'n*, 576 F.Supp. 790 (N.D.Ind.1983) (burden rests upon party opposing the levy to show that taxpayer has no interest in property).

1. Provision of rent-free housing to Spence's mother

■ Defendant provided her mother-in-law with a rent-free apartment for 88 months. She contends that she and Spence intended this arrangement to satisfy in full

her debt to him; although they planned to memorialize this verbal agreement, they "never got around to it." Speir Aff., March 11, 1992. The evidence adduced at trial indicates that defendant's provision of the apartment to her mother-in-law was merely a gift, making equitable setoff inappropriate.

First, Deborah Harper, a Revenue Officer, testified that defendant never mentioned this arrangement when served with the Notice of Levy. Instead, defendant stated that her reason for not paying the levy was payment of three $5,000.00 notes on behalf of Spence. Harper subsequently determined that those notes had been paid prior to the December 14, 1983, transaction between defendant and Spence. The Court finds Harper's testimony highly credible.[3] Defendant's proffered explanation appears to be merely a post hoc justification.

Second, defendant's and Spence's actions following the creation of the note indicate that they did not intend for provision of a rent-free apartment to Spence's mother to reduce the debt incurred on December 14, 1983. On April 4, 1986, defendant allowed Spence to subordinate the deed to secure debt to any new loans so that Spence could borrow additional funds from Pembroke State Bank. In a financial statement submitted to the Department of Justice on October 24, 1986, Spence indicated that defendant owed him $14,000.00.[4] Both actions are inconsistent with a debt that had been satisfied.

Defendant provided a rent-free apartment to her mother-in-law with no legal obligation to do so. Although philanthrop-

---

**3.** Two factors support Harper's reliability. First, when defendant was asked whether she discussed the apartment arrangement with Harper, defendant testified only that she was not sure. Second, Harper and defendant apparently had a course of dealing prior to Harper's serving the Notice of Levy. Given Spence's other tax problems, Harper assisted defendant with sale of Spence's house to satisfy part of his tax liabilities. These previous dealings indicate that defendant could have been candid with Harper.

**4.** This amount reflects no reduction in the note. Spence probably chose to record $14,000.00 on this statement since it is the nearest whole num-

ber to the amount of the debt. If this assumption is incorrect, $14,000.00 does not show a correct reduction of the debt. With consecutive monthly payments beginning on February 1, 1984, defendant would have made approximately 32 payments before Spence completed this statement. At $184.68 per month, defendant would have paid roughly $5,909.76. Alternatively, defendant would have furnished approximately 33 months of housing at $150.00 per month by this time to her mother-in-law; this arrangement would have reduced the debt by $4,950.00. The total loan value over its ten-year life was $22,161.60.

ic, this voluntary payment cannot be setoff from debt that defendant owes to Spence.

### 2. Payments made to Spence's creditors

■ Defendant next argues that the Court should setoff from the amount due under the promissory note payments made by defendant to Spence's creditors from 1983 to 1989. The defendant claims that she paid $6,024.26 on behalf of Spence; she arrived at this figure during the 1990 preparation of her 1983 to 1989 tax returns. With the evidence presented at trial, defendant failed to meet her burden of showing that these payments reduced her obligation to Spence. Accordingly, equitable setoff is inappropriate.

Pamela O'Quinn, the C.P.A. who prepared defendant's 1983 through 1989 tax returns, testified that defendant arrived at the $6,024.26 figure by analyzing her checkbook and bank records to determine what checks had been written on behalf of Spence.[5] O'Quinn asked about, but did not review, checks that defendant determined had been written on Spence's behalf. At trial, O'Quinn stated that she would not have classified at least one check—a January 3, 1984, check for regime fees paid on the apartments purchased by defendant from Spence—as a payment made on Spence's behalf. Finally, O'Quinn testified that defendant never discussed repayment of the December 14, 1983, promissory note with her.

Defendant's testimony proved to be damaging to her case. When asked by her attorney about the apartment transaction, defendant stated that she did not sign the promissory note because of a verbal agreement with Spence to provide his mother with an apartment and to pay his debts to Ogeechee Net Shop.[6] Defendant never testified that the $6,024.26 paid on behalf of Spence was pursuant to an agreement to reduce her debt on the promissory note. In fact, the only evidence that defendant presented on this issue was O'Quinn's testimony on the manner in which this amount was determined.

Defendant cannot setoff the $6,024.26 that she allegedly paid to Spence's creditors from the amount due under the promissory note. O'Quinn's testimony indicated that this amount was speculative and determined by defendant without clear documentation. Additionally, defendant presented absolutely no evidence that these payments were made pursuant to an agreement to reduce the debt under the promissory note. Since all testimony and evidence at trial indicated that these payments were voluntary, her claim of equitable setoff is without merit.

### 3. The amount to which the United States is entitled

The extent of defendant's personal liability for failing to honor the levy is "a sum equal to the value of the property or rights to property not surrendered." 26 U.S.C. § 6332(d)(1). Interest on this amount accrues pursuant to 26 U.S.C. § 6621 from the date of the levy until the date of payment. *Id.* Since payment of Spence's creditors and provision of rent-free housing to Spence's mother were voluntary obligations undertaken by defendant, she is not entitled to setoff any amount. Accordingly, the United States is entitled to $19,576.08, the principal and interest currently due under the obligation; future amounts as they come due[7]; and interest on this amount from the date of the levy until the date of payment pursuant to 26 U.S.C. § 6621.

---

**5.** Defendant hired O'Quinn in July 1990 to file her past due returns for the preceding years.

**6.** By Order dated August 10, 1992, the Court held that defendant's payment to Ogeechee Net Shop occurred after the date of the levy, and accordingly could not reduce her obligation to the United States. Although defendant argued at trial that some payments had been made to Ogeechee Net Shop prior to the levy, the evidence offered in support of her claim indicates otherwise. In a suit brought by the business in the Magistrate Court of Bryan County, Georgia, judgment was rendered against defendant on December 19, 1989, and the Fi.Fa. was not canceled until March 12, 1990.

**7.** Approximately 14 payments remain on the note after December 1, 1992.

## CONCLUSION

Defendant had the burden of showing that Spence was no longer entitled to payment under the promissory note. She relied on Georgia's equitable setoff statute in an attempt to demonstrate that her debt to Spence had been satisfied by providing his mother with rent-free housing and by paying certain debts of Spence. Although defendant argued that these payments were made on behalf of Spence, she failed to show that she had an obligation to make these payments. Accordingly, the apartment arrangement and payment of creditors on behalf of Spence amounted to nothing more than voluntary payments not subject to equitable setoff. As a result, the United States is entitled to the full value of the promissory note in addition to statutory interest.

IT IS HEREBY ORDERED, ADJUDGED and DECREED that judgment be and is entered for the United States.