A89A1177. FINCHER v. BERGERON et al.
(387 SE2d 371)

McMURRAY, Presiding Judge.

Woodrow J. Bergeron and Cheryl Bergeron (plaintiffs) filed an action for damages against G. W. Fincher (defendant) and alleged that defendant fraudulently induced them to purchase a house which appeared to be in good condition, but was actually in substandard condition. The thrust of plaintiffs' claim is that defendant failed to inform them of several "concealed defects" in the house which were not noticeable upon a reasonable inspection.

The evidence presented at a jury trial showed that in 1976 defendant purchased a 22-acre parcel of land in Union County, Georgia. There were three buildings on the property which were then about two years old, a dwelling house (comprising approximately 5,000 square feet of living space and a 576 square foot garage), a pool house and a "workshop." After defendant and his wife and children moved into the house, defendant supervised the installation of a basement in

the main dwelling house. This project involved extensive electrical and plumbing modifications and included the installation of a dropped ceiling, carpeted flooring, wall covering and a kitchen with a gas stove, sink and dishwasher.

In August 1985, defendant had the 22-acre parcel appraised and it was valued at $230,000. On September 1, 1985, defendant listed the property with a real estate company in Blairsville, Georgia, and the listing contract provided that the property would be marketed at its appraised value.

In January 1986, agents with the real estate company took plaintiffs to defendant's property for an inspection, explaining to plaintiffs that the property has "a nice house [that] looks pretty." Defendant was not present during the inspection and plaintiffs examined the dwelling house for approximately two hours, testing a couple of "faucets," "looking at colors" and "looking where to put furniture." Plaintiff Cheryl Bergeron observed plumbing fixtures in the pool house, but she did not test their function. Plaintiff Woodrow J. Bergeron noticed that the roofs on the buildings were worn and determined that they would soon need to be replaced. Plaintiffs also noticed that the dwelling house displayed signs of normal wear and tear, but they did not observe any condition which indicated that major defects existed in the utility systems or the structural integrity of the buildings.

Plaintiffs did not again inspect the property, nor did they question defendant or defendant's agents about the structural integrity of the property.[1] However, plaintiffs did obtain information regarding the appraised value of the property and they offered to purchase it for $189,900. Defendant accepted the offer and, prior to closing, plaintiffs "asked [an agent with the listing real estate company] to walk through [the house] and see if there was any damage done." Defendant's agent did not observe any damage to the property. (Plaintiffs testified that they also relied on their lender's appraiser's opinion regarding the condition of the property.)

The transaction was closed in June 1986. However, defendant remained in the house with plaintiffs' consent until August 1986. Shortly thereafter, plaintiffs moved in and discovered that every bathroom in the dwelling house was malfunctioning and that some of the plumbing fixtures in the pool house were not functioning. It was later determined that a water source had not been extended to the swimming pool; that the toilet in the pool house was not connected; that other plumbing fixtures in the basement of the dwelling house were not connected and that water seepage from the malfunctioning

---

[1] It is undisputed that plaintiffs did not meet or talk with defendant until after the transaction was closed.

plumbing in the dwelling house had resulted in structural damage behind bathroom fixtures, walls and floors. Plaintiffs also discovered faulty electrical wiring in the dwelling house and learned that all of the natural gas lines into the dwelling house had been severed and left open in the crawl space. Finally, plaintiffs determined that the roofs of the structures on the property required replacement; that the heating and air conditioning system of the dwelling house required extensive repair and that the drainage plan which was implemented outside the underground walls of the basement was defective, causing water seepage which deteriorated a wood floor concealed beneath the carpet in the basement.

After the close of the evidence, the trial court directed a verdict for defendant with regard to damages resulting from the faulty heating and air conditioning system and the leaky roof systems. Upon consideration of the case by the jury, a verdict was returned for plaintiffs in the amount of $5,000. No punitive damages were awarded. This appeal followed the denial of defendant's motion for new trial. *Held:*

1. Defendant contends in his first two enumerations that the trial court erred in denying his motion for directed verdict, arguing that the evidence was insufficient to support plaintiffs' claim of fraud.

(a) "As was pointed out by this court in *Wilhite v. Mays*, 140 Ga. App. 816, 817 (232 SE2d 141) [affirmed 239 Ga. 31 (235 SE2d 532)], fraud in the sale of real estate may be predicated upon a wilful misrepresentation, i.e., the seller tells a lie; upon active concealment where the seller does not discuss the defect but takes steps to prevent its discovery by the purchaser; and thirdly a passive concealment where the seller does nothing to prevent the discovery but simply keeps quiet about a defect which though not readily discernible, is known to the seller. Traditionally, the rule of caveat emptor had applied and the sales contract merged into the warranty deed and foreclosed any right of remedy by the purchaser after the closing of the contract by transfer of the deed. See *Holmes v. Worthey*, 159 Ga. App. 262 (282 SE2d 919). *Wilhite*, supra, changed the rule of caveat emptor and placed upon the builder-seller a duty to disclose a defect of which he knows but is aware that the purchaser is ignorant of the condition and which probably would affect the decision of the purchaser to close the transaction. See also *Holmes*, supra." *Mulkey v. Waggoner*, 177 Ga. App. 165, 166 (338 SE2d 755). In the case sub judice, the pivotal issue is whether there was sufficient evidence to authorize a finding of fraud through "passive concealment." In this regard, defendant argues that there was insufficient evidence to authorize a finding that he was aware of all of the defects in the pool house and the dwelling house. We do not agree.

Defendant resided on the property for more than 10 years before

plaintiffs moved in. He supervised a major renovation project on the dwelling house and defendant was responsible for all maintenance on the property. Finally, defendant admitted that he had repaired plumbing in the dwelling house two to three years before he sold the property to plaintiffs. This evidence was sufficient to bring into question defendant's claim of ignorance as to the defective plumbing in the dwelling house, the leaky basement with its rotting floor and the structural damage in the bathrooms.

(b) Next, defendant argues that he is not responsible to plaintiffs for damages stemming from the cost of repairing the deficiencies on the property because plaintiffs failed to exercise due diligence in inspecting the property before purchase.

" 'The law does not afford relief to one who suffers by not using the ordinary means of information, whether the neglect is due to indifference or credulity. "When the means of knowledge are at hand and equally available to both parties, and the subject of purchase is alike open to their inspection, if the purchaser does not avail himself of these means he will not be heard to say, in impeachment of the contract of sale, that he was deceived by the vendor's representations [or lack thereof]." (Cit.)' *Kirven v. Lackett*, 208 Ga. 178, 182 (65 SE2d 791) (1951); *Blanchard v. West*, 115 Ga. App. 814 (2) (156 SE2d 164) (1967)." *Miller v. Clabby*, 178 Ga. App. 821, 823 (344 SE2d 751). However, the question of whether a purchaser exercised ordinary care in inspecting real property before purchasing it is generally an issue for the finder of fact. See *Wilhite v. Mays*, 239 Ga. 31, 32, supra. Compare *Crawford v. Williams*, 258 Ga. 806 (375 SE2d 223).

In the case sub judice, none of the defects in the buildings on the property can be characterized, as a matter of law, as typical wear and tear on a "14 to 15"-year-old house. Further, none of the defects were noticeable upon plaintiffs' visual examination. The basement floor was dry when plaintiffs inspected the dwelling house. Carpet was over the bathroom floors where water had damaged the underlying structure. There was a dropped ceiling in the basement, concealing all signs of defective plumbing and wiring. Plumbing fixtures in the basement were installed and appeared to be functioning. The plumbing fixtures in the pool house were in place and appeared to be functional; and, the severed gas lines were found in a crawl space that did not have access via a planned entryway. (Workmen were required to enter the crawl space through a dropped ceiling tile in a closet of the basement.) Under these circumstances, we cannot say that the trial court erred in finding that sufficient evidence existed to authorize a finding that plaintiffs exercised proper diligence in examining the subject property.

(c) Finally, defendant argues that plaintiffs "failed to prove damages." This argument is without merit.

Plaintiff Woodrow J. Bergeron testified that he expended $4,326 to repair the defective plumbing system in the dwelling house; that he paid $2,700 to repair the leaky basement and the water damaged basement floor and that he spent over $500 to repair the severed gas lines. This evidence alone was sufficient to authorize the jury's $5,000 verdict. Consequently, the trial court did not err in denying defendant's motion for directed verdict.

2. In his final enumeration, defendant contends "[t]he trial court erred in failing to instruct the jury on the effect of [the] partial directed verdict in [defendant's] favor."

This matter was not brought to the trial court's attention at trial. Consequently, there remains nothing for appellate review. *Smith v. Pierce*, 179 Ga. App. 724 (2) (347 SE2d 692); *Department of Transp. v. Poole*, 179 Ga. App. 638, 640 (3) (347 SE2d 625).

*Judgment affirmed. Carley, C. J., and Beasley, J., concur.*

DECIDED OCTOBER 3, 1989 —
REHEARING DENIED OCTOBER 23, 1989 —

*Michael D. McChesney*, for appellant.
*Woodside & Boemanns, R. John Boemanns*, for appellees.