A99A1532, A99A1533. HOLLOMAN et al. v. D. R. HORTON, INC. et al.; and vice versa.
A99A1534. LAWLER v. HOLLOMAN et al.
(524 SE2d 790)

SMITH, Judge.

These three related appeals arise from a dispute between a homebuilder and its dissatisfied customers. Carol H. Holloman and James L. Holloman filed an action against D. R. Horton, Inc., the homebuilder, David Mackey, Horton's representative and construction manager, and John M. Lawler, Community Development Director for the City of Norcross. The Hollomans' complaint sought damages for breach of contract and violation of the Fair Business Practices Act against Horton, for negligent construction against Horton and Mackey, and for negligent inspection, fraudulent concealment of defects, fraud, and violation of the Racketeer Influenced & Corrupt Organizations Act (RICO) against Horton, Mackey, and Lawler.

Lawler filed a motion for summary judgment on the basis of official immunity, among other grounds. That motion was denied, and Lawler filed an application for an interlocutory appeal but later withdrew it. Horton and Mackey filed a joint motion to dismiss or for partial summary judgment, later amended to seek full summary judgment, and Lawler filed a motion to dismiss.

The trial court entered a lengthy and thorough order dealing with all pending motions, as well as an additional order on motion for reconsideration elaborating on its reasoning in the earlier order. The trial court determined that a genuine issue of material fact existed as to the Hollomans' claims for breach of contract but found that the Hollomans had waived any claim for rescission. The trial court also found material issues of fact with respect to the allegations of fraud but granted summary judgment on the Hollomans' claims of negligent construction and negligent inspection. From these decisions the

parties appeal.[1]

After reviewing the record and the contentions of all the parties, we find that the trial court correctly allowed the Hollomans' breach of contract and fraud claims to proceed and correctly concluded that any rescission claim was waived. The trial court erred, however, in relying on the "economic loss rule" to grant summary judgment to the defendants on the Hollomans' negligence claims. The trial court also erred in refusing to grant summary judgment to Lawler on the ground of official immunity. We therefore affirm the trial court's judgment in part and reverse it in part.

### Case No. A99A1533

We first consider the appeal of Horton and Mackey, in which they assert that the trial court erred in denying their motions for summary judgment on the Hollomans' breach of contract[2] and fraud claims. We find no error and affirm.

1. (a) First, we address Horton's contention that a paragraph in its printed one-page "agreement of sale" excludes all express and implied warranties other than that in the Home Owner's Warranty Corporation (HOW) booklet.[3] But when a contract is partly printed and partly handwritten or typed, the written or typed portions are given greater weight in construing the parties' intent. *Grier v. Brogdon*, 234 Ga. App. 79, 81 (2), n. 10 (505 SE2d 512) (1998). The agreement between the parties in this case includes a nine-page typewritten addendum drafted by Mr. Holloman. The closing documents expressly provide that all terms of the contract shall survive closing. "It is well established that a court should avoid an interpretation of a contract which renders portions of the language of the contract meaningless." (Citations and punctuation omitted.) *State Farm &c. Ins. Co. v. Terry*, 230 Ga. App. 12, 15 (2) (495 SE2d 66) (1997), aff'd, 269 Ga. 777 (504 SE2d 194) (1998). Horton's proposed interpretation of the agreement between the parties would render most if not all of the addendum meaningless, and the rules of construction do not allow us to interpret the contract in that manner.

(b) We next consider the trial court's determination that material

---

[1] In its orders, the trial court made a number of other rulings from which the parties do not appeal. The Hollomans do not appeal the trial court's grant of summary judgment on their claim that they were fraudulently induced to enter into the contract, summary judgment on their RICO claims, or the dismissal of their Fair Business Practices Act claim on procedural grounds. The defendants do not appeal the trial court's denial of their motions to dismiss.

[2] While Mackey asserts that he is entitled to summary judgment on the contract claim, that claim was never asserted against him, as the Hollomans' complaint and the trial court's order make plain.

[3] No HOW warranty was obtained, however.

issues of fact exist. The standards applicable to motions for summary judgment generally are well established.

> When ruling on a motion for summary judgment, the opposing party should be given the benefit of all reasonable doubt, and the court should construe the evidence and all inferences and conclusions therefrom most favorably toward the party opposing the motion. Further, when reviewing the grant or denial of a motion for summary judgment, this [c]ourt conducts a de novo review of the law and the evidence.

(Citations omitted.) *Supchak v. Pruitt*, 232 Ga. App. 680, 682 (1) (503 SE2d 581) (1998).

The typewritten addendum to the contract contains numerous special stipulations, including a provision that, if a HOW warranty is unavailable, "builder will provide a 2 year warranty on everything and a 10 year warranty on the structure." While Horton contends that the Residential Warranty Corporation (RWC) warranty it provided at closing fulfilled this obligation, the Hollomans contend that it did not, pointing to significant omissions and exclusions in the RWC coverage. The addendum also provides specifications regarding the construction of the house and the materials used, which the Hollomans contend were breached by Horton. Giving the benefit of all reasonable doubt to the Hollomans and construing the evidence and all inferences and conclusions drawn from it in their favor, we agree with the trial court that material issues of fact remain regarding Horton's obligations under the contract and whether it breached them. The trial court did not err in refusing to grant summary judgment on this issue.

2. We agree with the trial court that genuine issues of material fact also remain on the Hollomans' fraud claims. Fraud in the sale of real estate may be based upon several theories:

> [F]raud in the sale of real estate may be predicated upon a wilful misrepresentation, i.e., the seller tells a lie; upon active concealment where the seller does not discuss the defect but takes steps to prevent its discovery by the purchaser; and thirdly a passive concealment where the seller does nothing to prevent the discovery but simply keeps quiet about a defect which though not readily discernible, is known to the seller.

(Punctuation omitted.) *Fincher v. Bergeron*, 193 Ga. App. 256, 258 (1) (387 SE2d 371) (1989). Georgia law has placed a special duty of disclosure on the builder-seller that markets its new homes to con-

sumers. The "passive concealment" exception to the general rule of caveat emptor

> places upon the seller a duty to disclose in situations where he or she has special knowledge not apparent to the buyer and is aware that the buyer is acting under a misapprehension as to facts which would be important to the buyer and would probably affect his decision. *Wilhite v. Mays*, [140 Ga. App. 816, 818 (3) (232 SE2d 141) (1976), aff'd, 239 Ga. 31 (235 SE2d 532) (1977)]. See also *PBR Enterprises v. Perren*, 243 Ga. 280 (4) (253 SE2d 765) (1979); *Worthey v. Holmes*, [249 Ga. 104, 105 (2) (287 SE2d 9) (1982)].

(Punctuation omitted.) *Perrett v. Dollard*, 176 Ga. App. 829, 830 (2) (338 SE2d 56) (1985).

The Hollomans provided expert testimony that the house was defective in many respects, such as improper installation of the manufactured floor system, framing defects, and other construction defects, including improper installation of stucco, siding, and windows. The Hollomans' expert witness concluded that the house had so many structural defects that it was unsound and not suitable for its intended use. He attributed the defects to "a general performance failure at all levels of the construction process." It is undisputed that Horton is a builder-seller chargeable with special knowledge of the alleged defects. See *Wilhite*, supra; *Worthey*, supra.

The Hollomans also allege by affidavit that they "have . . . been informed" that Horton was notified by a floor joist manufacturer of certain necessary structural corrections but failed to make them. We do not consider this allegation because evidence on summary judgment is held to the same standards of admissibility as evidence at trial, and inadmissible hearsay has no probative value unless an exception to the hearsay rule applies. *Hardee's Food Systems v. Green*, 232 Ga. App. 864, 866 (1) (502 SE2d 738) (1998). But the Hollomans' expert also relied upon the written reports of the manufacturer's representative to testify that defects were identified but corrections were not made. An expert witness may base his opinion on hearsay and may be allowed to testify as to the basis for his findings. *King v. Browning*, 246 Ga. 46, 47 (268 SE2d 653) (1980).

With respect to defendant Mackey, although he was not a party to the contract between the Hollomans and Horton, he acknowledged that he was Horton's representative and supervised the construction of the Hollomans' house on Horton's behalf. Moreover, evidence was presented that he was the only representative of Horton who attended both the inspection of the house prior to closing and the inspection at which the Hollomans pointed out their specific com-

plaints regarding construction. At the latter inspection, Mackey was the representative who indicated which items would and would not be repaired by Horton. Mackey therefore was in a position of superior knowledge to the Hollomans with regard to the condition of the house and chargeable with knowledge of the alleged defects.

Even a third party who is not an employee or representative of the builder may be chargeable with negligent misrepresentation, when the desired result of the representation is reliance upon it by a known third party. See *Robert & Co. Assoc. v. Rhodes-Haverty Partnership*, 250 Ga. 680 (300 SE2d 503) (1983) (allowing cause of action for misrepresentation despite lack of privity between parties). The trial court did not err in allowing the fraud claims against Horton and Mackey to proceed.

## *Case No. A99A1532*

The Hollomans' appeal raises two enumerations of error. First, they contend that the trial court improperly found they waived their right of rescission by electing to sue on the contract. They also contend that the trial court improperly applied the economic loss rule to their negligence claims. We agree with the trial court's conclusion that the Hollomans' right of rescission was waived, but we find the trial court's application of the economic loss rule erroneous in these circumstances and reverse the grant of summary judgment on the negligence claims.

3. In a careful and complete analysis of the Hollomans' election of remedies, the trial court concluded that although the Hollomans made an attempt to rescind the contract, they did not adhere to that intention in their subsequent actions or pleadings and thereby waived any claim for rescission. We agree.

A purchaser claiming to have been fraudulently induced into entering a sales contract has an election of remedies involving rescission or affirmation of the contract. One remedy is to promptly after discovery of the fraud rescind the contract, and after offering to restore the benefits received under the contract or showing a sufficient reason for not doing so, sue in tort for recovery of the purchase price and for any additional damages resulting from the alleged fraud. The other remedy is to affirm the contract and sue for damages resulting from the alleged fraud. Such a suit for damages by the defrauded party for the fraud committed is not a suit for the violation of the contract, but is one for a tort and involves affirmance of the contract, and the defrauded party may

keep the fruits of the contract and maintain an action for the damages suffered by reason of the fraud.

(Citations and punctuation omitted.) *Ben Farmer Realty Co. v. Woodard*, 212 Ga. App. 74 (441 SE2d 421) (1994). An announcement of the intent to rescind the contract must be made in a timely fashion, as soon as the facts supporting the claim for rescission are discovered. Moreover, the aggrieved party must adhere to the intent to rescind and may waive any claim for rescission by failing to do so. *Fla. Intl. Indem. Co. v. Osgood*, 233 Ga. App. 111, 113 (503 SE2d 371) (1998); *Meadow River Lumber Co. v. Univ. of Ga. Research &c.*, 233 Ga. App. 169, 176 (2) (503 SE2d 655) (1998). Once a claim for rescission is waived, it cannot be revived:

Forfeitures of rights under valid legal contracts are not favored under the law. Our courts generally are quick to seize upon any waiver of a forfeiture, the rule being that the right to rescind for any breach must be asserted promptly, and a waiver of a breach or forfeiture can not be recalled.

(Citations and punctuation omitted.) *John McDonald Pontiac-GMC Truck v. Klopper*, 205 Ga. App. 639, 641 (422 SE2d 925) (1992).

In its orders, the trial court carefully examined all the circumstances of the Hollomans' alleged discovery of the defects in the house, their demand for rescission, their initial complaint, and their conduct after the litigation began. We agree that the Hollomans' actions, viewed as a whole, were inconsistent with a prompt and consistent attempt to rescind. Approximately one year after closing, the Hollomans presented Horton with a list of 169 defects in the house and requested repairs and remedial work under the contract. Approximately three months later, in February 1996, the Hollomans sent a letter announcing their intent to rescind the contract and demanding the refund of the original purchase price and an additional $25,000 in damages.

But in April 1996, the Hollomans filed their complaint without a count seeking rescission and with no allegation of the necessary elements of such a claim. Although the Hollomans included a prayer for rescission as one of eleven subsections of their prayer for relief, "the prayer is not an allegation in the complaint which requires an answer (OCGA § 9-11-8 (d)) and is not part of plaintiffs' cause of action. [Cits.]" *Drug Emporium v. Peaks*, 227 Ga. App. 121, 128 (2) (c) (488 SE2d 500) (1997) (no claim for punitive damages when no separate count in complaint, even though prayer for relief requested punitive damages). The original complaint, by affirming the contract and seeking damages resulting from the alleged fraud without alleg-

ing any cause of action for rescission, constituted an election of remedies and a waiver of any rescission claim. And the Hollomans' attempt to amend their complaint to add a count seeking equitable relief and rescission over two years after suit was filed, and after Horton and Mackey amended their motion for summary judgment to raise this issue, could not revive their claim for rescission.

4. The Hollomans also complain that the trial court improperly applied the "economic loss rule" to their claims of negligence. We agree.

> The economic loss rule provides that absent personal injury or damage to property other than to the allegedly defective product itself an action in negligence does not lie and any such cause of action may be brought only as a contract warranty action. The rationale underlying this rule is that when a defective product has resulted in the loss of the value or use of the product itself, or the cost of repairing it, the plaintiff is merely suing for the benefit of his bargain.

(Citations, punctuation and footnote omitted.) *Advanced Drainage Systems v. Lowman*, 210 Ga. App. 731, 733-734 (2) (437 SE2d 604) (1993). See also *Bates & Assoc. v. Romei*, 207 Ga. App. 81, 83 (4) (426 SE2d 919) (1993).

A leading treatise on torts indicates that this rule is generally applicable to a home constructed by a builder, see Prosser & Keeton on the Law of Torts, § 92, p. 659 (5th ed. 1984),[4] but we have found no Georgia case that so holds. It appears that at least with respect to homebuilders marketing and selling their homes to the public, Georgia law allows contract and negligence actions to proceed simultaneously. *Holmes v. Worthey*, 159 Ga. App. 262, 266-267 (contract), 268 (negligence) (282 SE2d 919) (1981), aff'd, *Worthey v. Holmes*, 249 Ga. 104.

But under the facts of this case, we need not decide whether the economic loss rule applies generally to home construction and sales. Even if the rule were applicable to the Hollomans' claims, it contains an exception overlooked by the parties but clearly relevant here.

Two exceptions are generally stated to the economic loss rule: the accident exception, which is not applicable here, and the misrep-

---

[4] "Thus, a builder or a contractor would normally be subject to liability on a contract theory only, to the promisee and a third-party beneficiary for delays in construction or defects in construction that do not result in physical harm to persons and tangible things, other than the thing itself that is being constructed or repaired." (Citations and footnote omitted.) Id.

resentation exception. The latter exception has been defined as follows:

> One who supplies information during the course of his business, profession, employment, or in any transaction in which he has a pecuniary interest has a duty of reasonable care and competence to parties who rely upon the information in circumstances in which the maker was manifestly aware of the use to which the information was to be put and intended that it be so used. This liability is limited to a foreseeable person or limited class of persons for whom the information was intended, either directly or indirectly.

(Punctuation omitted.) *Lowman*, supra at 734. By adopting this exception, the Supreme Court approved the language of the Restatement of Torts, 2d, § 552 (1977):

> The Restatement of Torts 2d, § 552 (1977) provides in pertinent part: "(1) One who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information." [Cit.]

Id. at n. 2.

This view is supported by our decision in *Swiedler v. Ferguson*, 195 Ga. App. 364, 366 (393 SE2d 456) (1990), although that case involved a private home seller rather than a builder-seller. In *Swiedler*, we recognized that the misrepresentation exception to the economic loss rule, as set forth in the Restatement of Torts, "is no more than an affirmation of the principles of passive concealment or plain fraud, constructive or actual." (Citation and punctuation omitted.) Id. The economic loss rule is inapplicable in the presence of passive concealment or fraud. Since the trial court correctly denied summary judgment on the Hollomans' fraud claims, it erred in granting summary judgment on the Hollomans' negligence claims on the basis of the economic loss rule.

### Case No. A99A1534

5. In his appeal, Lawler contends the trial court erred in denying his motion for summary judgment on the ground of official immunity. We agree and reverse.

Lawler is the City of Norcross Community Development Director, a supervisory position with two employees under him. Lawler personally performed one inspection, but the "primary inspector," the engineer-inspector in his department, performed the remaining eleven inspections of the Hollomans' house and in each case indicated a successful inspection on the building permit. In his deposition, Lawler described at length the inspection and approval process and the various codes and standards relied upon by his department in that process. Lawler testified that his engineer would not sign off on the building permit until the violations he found, if any, were corrected.

Under Georgia law, public officers and employees are entitled to official immunity from any cause of action brought against them in their private or personal capacity when they are sued for discretionary acts taken within the scope of their employment and without actual intent to injure.

> When a public employee is sued over his misperformance or nonperformance of a discretionary act, the employee may be held liable only where evidence shows he or she acted with "actual malice or with actual intent to cause injury in the performance of [his or her] official functions." Ga. Const. 1983, Art. I, Sec. II, Par. IX (d). The Supreme Court has determined that "actual malice" excludes any concept of "implied malice" or "reckless disregard" and means only "express malice or malice in fact." [Cit.]

*Caldwell v. Griffin Spalding County Bd. of Ed.*, 232 Ga. App. 892 (503 SE2d 43) (1998) (physical precedent only).

While the Hollomans raise numerous arguments regarding Lawler's alleged misconduct in issuing a certificate of occupancy despite failure to abide by the relevant building codes, they have not demonstrated actual malice on his part. In fact, in their depositions, the Hollomans acknowledged that their complaint with regard to Lawler is based entirely on their contention that he should have performed a better inspection before issuing a certificate of occupancy. They specifically acknowledged that they knew of no evidence to support the allegation in their complaint that Lawler was aware of and intentionally concealed code violations.

The Hollomans' sole remaining support for their allegations of fraud and malice is their contention that Lawler approved the construction of their house based solely on a "comfort level" rather than the applicable building codes and actual inspection. But this argument fundamentally misstates Lawler's testimony.

It is apparent from the relevant portion of Lawler's deposition

that his mention of a "comfort level" referred only to the general use of pre-manufactured engineered truss joists by Horton in building all the houses in the Hollomans' subdivision. The deposition also shows that Lawler was testifying to his department's general satisfaction with the use of such pre-manufactured components based upon engineering specifications, compliance with the Southern Standard Building Code, review by a manufacturer's representative, and the city's experience with the product in the course of Horton's subdivision project.

Lawler's use of the phrase "comfort level" in describing his department's generally positive experience with the use of such manufactured components in no way contradicts or detracts from his clear and detailed testimony that the Hollomans' house was inspected by Lawler and his subordinate in accordance with the procedures prescribed by the City of Norcross and the various building codes adopted by the city. This testimony does not show that Lawler acted with actual malice or intent to cause injury in the course of his department's inspection of the Hollomans' house.

Because no issue of malice or intent to cause injury is presented by the evidence, the question of Lawler's official immunity for his actions as a building inspector is directly controlled by this court's decision in *Peele v. Dobbs*, 196 Ga. App. 684 (396 SE2d 600) (1990). In *Peele*, homeowners sued a county building inspector after a chimney fire damaged their home, alleging that he negligently inspected and approved the construction of the chimney. We affirmed the trial court's grant of summary judgment on the basis of official immunity, observing that it was without dispute that the inspector was acting in his official capacity as building inspector and no allegation of wilfulness, malice or corruption was made. The appellants in *Peele*, like the Hollomans here, contended that official immunity did not apply because they sued the inspector in his individual rather than his official capacity and because they alleged that his inspection of the property was a ministerial rather than a discretionary function. This court rejected that argument, observing that the inspector was sued "solely because of the position he held and the duties imposed upon him as a result of this position. Indeed, the act complained of could only have been done in his official capacity." (Punctuation omitted.) Id. In other words, we observed, the homeowners were contending that the inspector,

> acting in his official capacity as building inspector, failed to exercise sound judgment (discretion) in allowing what they alleged to be a hazardous condition to exist. Therefore, the act or failure to act is not ministerial in nature, but is, rather, discretionary.

(Citation and punctuation omitted.) Id. Moreover, "'one who supervises or monitors another exercises discretion in so doing.'" *Brantley v. Dept. of Human Resources*, 235 Ga. App. 863, 864 (509 SE2d 645) (1999). The trial court therefore erred in denying Lawler's motion for summary judgment.

*Judgment affirmed in Case No. A99A1533. Judgment affirmed in part and reversed in part in Case No. A99A1532. Judgment reversed in Case No. A99A1534. Pope, P. J., and Eldridge, J., concur.*

DECIDED NOVEMBER 9, 1999 —
RECONSIDERATION DENIED NOVEMBER 30, 1999 — ▮▮▮▮▮

*Wilson, Strickland & Benson, Warner R. Wilson, Jr., Sara L. Doyle*, for Holloman et al.

*Johnson, Matte & Hobgood, Thomas T. Hobgood, Timothy W. Johnson*, for D. R. Horton, Inc. et al.

*McCullough Sherrill, Kirk R. Fjelstul, Victor A. Ellis*, for Lawler.