**WEED WIZARD ACQUISITION CORPORATION, Plaintiff,**

v.

**A.A.B.B., INC., formerly known as Weed Wizard, Inc., Pam Butler, Don Bryan, Mable Bryan, Norman Adams, James Anderson, Z.V. Major, Defendants.**

**Civil Action No. 2:00–CV–0129–RWS.**

United States District Court, N.D. Georgia, Gainesville Division.

May 17, 2002.

Julius M. Hulsey, Joseph D. Cooley, III, Hulsey, Oliver & Mahar, Gainesville, Harris N. Cogan, Blank, Rome, Tenzer, Greenblatt, New York City, for Plaintiff.

Jon Douglas Stewart, Stewart, Melvin & Frost, Gainesville, William Vance Custer, IV, Nicole Jennings Wade, Powell, Goldstein, Frazer & Murphy, Atlanta, GA, for Defendants.

## ORDER

·STORY, District Judge.

Now before the Court for consideration are Defendants' Motion To Dismiss Count Two of Plaintiff's Amended Complaint with Prejudice [49–1], Motion To Determine Sufficiency of Plaintiff's Responses to A.A.B.B., Inc.'s Second Request for Admissions [53–1], Motion To Compel Further Responses to A.A.B.B., Inc.'s First Request for Production of Documents and To Deposition of Richard Raleigh [60–1], Defendants' Motion for Partial Summary Judgment on Counts One, Two, and Three of Plaintiff's Amended Complaint [61–1], Consent Motion for Extension of Discovery [64–1], Motion To Quash Subpoena Served by Defendants Upon BDO Seidman, LLP [80–1], Motion To Compel Responses to Subpoena Duces Tecum Served on BDO Seidman, LLP [88–1], and Defendants' Motion To File Documents Under Seal [95–1].

As a preliminary matter, the Court notes that subsequent to the filing of the Consent Motion for Extension of Discovery through February 28, 2002, the Court signed a Consent Order extending discovery through March 31, 2002. Therefore, the Consent Motion for Extension of Discovery [64–1] is hereby **DENIED AS MOOT**. Further, Plaintiff has not filed a response to Defendants' Motion To File Documents Under Seal. Under the Local Rules, failure to file a response indicates that there is no opposition to the motion. L.R. 7.1(B), NDGa. Thus, because Plaintiff does not oppose Defendants' motion, the

Court **GRANTS** Defendants' Motion To File Documents Under Seal [95–1]. After reviewing the record and considering the parties' arguments on the remaining motions, the Court enters the following Order.

## FACTUAL BACKGROUND

This dispute originated in the sale of Weed Wizard, Inc. ("WWI") to Weed Wizard Acquisition Corp. ("WWAC"), a wholly-owned subsidiary of U.S. Home and Garden, Inc. ("USH & G"). WWI, a Georgia corporation based in Dahlonega, Georgia, was engaged in the manufacture, sale, and distribution of lawn maintenance products.

In the fall of 1997, USH & G commenced negotiations with WWI to acquire the assets of WWI. After the parties negotiated a purchase price and the terms of the acquisition through letters of intent, WWAC conducted due diligence. During the due diligence investigation, USH & G became aware of several products liability claims against WWI relating to its Weed Wizard product—a chain that replaces the nylon string on string trimmers. WWAC retained outside product liability counsel to research the product liability issues involved with the Weed Wizard product. The outside law firm retained Meridian One, an engineering firm that had expertise in testing outdoor power equipment, to test the product. After significant testing, Meridian One concluded that the Weed Wizard product was safe when used for its intended purposes.

On February 25, 1998, pursuant to an Asset Purchase Agreement ("APA"), WWAC purchased substantially all of the WWI's assets for $14 million. The APA set forth various representations made by Defendants with regard to the product liability claims against WWI. The APA states:

4.11. *Litigation.* Other than as set forth in Schedule 4.11 there are no claims, suits, actions, arbitration, investigations, inquiry or other proceeding before any governmental agency, court or tribunal, domestic or foreign, or before any private arbitration tribunal, pending or, to the best of the knowledge of the Company, threatened, against or relating to the Company, the Business or any of the Purchased Assets. Other than as set forth on Schedule 4.11, there are no judgments, orders, stipulations, injunctions, decrees or awards in effect which name the Company, the effect of which is (A) to materially limit, restrict, regulate, enjoin or prohibit any business practice in any area, or the acquisition of any properties, assets or businesses, or (B) otherwise materially adverse to the Business or any of the Purchased Assets. . . .

APA § 4.11 (Cogan Aff. [87–1] Ex. A.) The APA also contained a merger clause, which provides as follows:

10.5 *Entire Agreement.* This Agreement (together with the other agreements and documents being delivered pursuant to or in connection with this Agreement) constitutes the entire agreement of the parties hereto with respect to the subject matter hereof, and supercedes all prior agreements and understandings of the parties, oral and written, with respect to the subject matter hereof.

APA § 10.5 (Cogan Aff. [87–1] Ex. A.)

After the closing, WWAC began manufacturing and selling Weed Wizard products. WWAC then learned that the Queensland Government of Australia had previously banned the Weed Wizard metal chain product because it was unsafe. In June 1992, pursuant to Workplace Health and Safety Regulations, the Government of Queensland issued a Prohibition Notice

banning the sale of the Weed Wizard product because it was "likely to cause an immediate risk to the health and safety of any person." (Cogan Aff. Ex. R.) On June 30, 1992, the Minister for Employment, Training and Industrial Relations issued a Media Release informing the public that the government had "banned the sale of potentially-lethal weed cutter and [was] issuing a statewide alert to home gardeners." (Cogan Aff. Ex. S.) Thereafter, the Queensland Government issued an order entitled "Fair Trading (Weed Wizard) Order 1993," which described the device known as the "Weed Wizard" and prohibited the supply of Weed Wizard products and similar devices in Queensland. (Cogan Aff. Ex. V.) The Court will refer to these items collectively as the "Australian Ban Order."

In June 1999, the United States Consumer Product Safety Commission ("CPSC"), after becoming aware of the Australian Ban Order and the product liability claims pending against WWI, began an investigation which led to a recall of the dangerous Weed Wizard product. After the recall in the United States, WWAC stopped selling the Weed Wizard I, but continued selling other model Weed Wizard products.

WWAC brought this action against WWI, the principal officer of WWI, and WWI shareholders. WWAC alleges fraud (Count One), breach of the representations and warranties set forth in section 4.11 of the APA (Count Three), and breach of section 4.9 of the APA (Count Four). Additionally, WWAC claims it is entitled to rescission of the APA (Count Two). Defendants move for partial summary judgment on Counts One, Two, and Three of the Amended Complaint.

Furthermore, the parties have filed various discovery motions that involve Defendants' attempts to elicit information about Plaintiff's knowledge regarding the safety of the Weed Wizard products prior to Plaintiff's acquisition of the assets. The Court will consider Defendants' motion for summary judgment before considering the discovery motions.

## DISCUSSION

### I. Defendants' Motion for Partial Summary Judgment

Federal Rule of Civil Procedure 56(c) provides that a district court shall grant summary judgment if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The applicable substantive law identifies which facts are material, and a fact is not material if a dispute over that fact will not affect the outcome of the suit under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

When the non-moving party has the burden of proof at trial, the movant may carry its burden at summary judgment by demonstrating the absence of an essential element of the non-moving party's claim. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In determining whether the movant has met this burden, the district court must view the evidence and all factual inferences in the light most favorable to the non-moving party. *Anderson*, 477 U.S. at 255, 106 S.Ct. 2505; *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158–59, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 606 (11th Cir. 1991).

If the movant meets this burden, the non-moving party then has the burden of showing that summary judgment is not

appropriate by setting forth "specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). An issue is genuine when the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505; *Thornton v. E.I. Du Pont De Nemours & Co.,* 22 F.3d 284, 288 (11th Cir.1994). The non-moving party cannot rely on his pleadings, but must file a response that includes other evidence showing that there is a genuine issue for trial. Fed.R.Civ.P. 56(e); *Combs v. Plantation Patterns,* 106 F.3d 1519, 1526 (11th Cir.1997); *Isenbergh v. Knight–Ridder Newspaper Sales, Inc.,* 97 F.3d 436, 439 (11th Cir.1996). Mere conclusory allegations and assertions are insufficient to create a disputed issue of material fact. *Earley v. Champion Int'l Corp.,* 907 F.2d 1077, 1081 (11th Cir.1990); *Mack v. W.R. Grace Co.,* 578 F.Supp. 626, 630 (N.D.Ga. 1983).

## A. Counts One and Two: Fraud and Rescission

■ In this case, Plaintiff alleges that "Defendants knowingly and intentionally misrepresented to Plaintiff that the Weed Wizard products were safe" and that Plaintiff "relied upon [D]efendants' representations in deciding to purchase the assets of WWI." (Compl.¶¶ 38–39.) Plaintiff also asserts that "Defendants intentionally failed to disclose the existence of the [Australian] Ban Order to [P]laintiff, the true cause of the injuries suffered by users of the Weed Wizard products[,] and the nature and extent of the defects in the Weed Wizard products." (Compl.¶ 40.) As a result of Defendants' fraudulent actions, Plaintiff alleges that it suffered damages in excess of $10 million, and Plaintiff asserts a fraud claim against Defendants (Count One). In the alternative, Plaintiff alleges that it has no remedy at law and because it was fraudulently induced to execute the

APA, it is entitled to rescission of the APA.

■ In this situation, upon discovering Defendants' alleged fraud, Plaintiff has an election of remedies: Plaintiff may "(1) rescind the contract, thereby restoring to [D]efendants the benefits [Plaintiff] received as a result of the [contract], and sue in tort for damages resulting from the alleged fraud or (2) affirm the contract, thereby retaining the benefits received under the contract, and sue for damages" under the contract. *Kobatake v. E.I. Du Pont De Nemours & Co.,* 162 F.3d 619, 625 (11th Cir.1998) (citing *Ben Farmer Realty Co. v. Woodard,* 212 Ga.App. 74, 441 S.E.2d 421, 422 (1994) (explaining that a party "claiming to have been fraudulently induced into entering a … contract has an election of remedies involving rescission or affirmation of the contract"); *Carpenter v. Curtis,* 196 Ga.App. 234, 395 S.E.2d 653, 655 (1990) ("Two actions are available to one who was fraudulently induced by misrepresentations into entering a contract: he can affirm the contract and sue for breach or seek to rescind and sue in tort for fraud and deceit.")). If a party elects to affirm the contract, the party is bound by its provisions. *Orion Capital Partners, L.P. v. Westinghouse Elec. Corp.,* 223 Ga. App. 539, 478 S.E.2d 382, 385 (1996). Rescission, on the other hand, relieves the party from any adverse consequences dictated by the terms of the contract, including a merger clause. *Id.*

Defendants, asserting that Plaintiff has affirmed the APA by continuing operations of the Weed Wizard business, argue that the merger clause bars Plaintiff's fraud claim. Plaintiff, on the other hand, contends that the merger clause is without force and effect because Defendants breached a duty to disclose information that would have prevented Plaintiff from entering into the APA. In the alternative,

Plaintiff argues that it is entitled to rescission of the APA. Defendants argue that Plaintiff may not seek rescission as a matter of law because Plaintiff has not satisfied the requirements for rescission under Georgia law. The Court will consider both options: affirmation and rescission.

### 1. Affirmation

Defendants argue that the merger clause in the APA bars Plaintiff's claim for fraud in this case. Assuming first that Plaintiff has affirmed the APA,[1] the Court agrees with Defendants that the merger clause bars Plaintiff's fraud claim.

■■■ In written contracts containing a merger clause, "prior or contemporaneous representations that contradict the written contract 'cannot be used to vary the terms of a valid written agreement purporting to contain the entire agreement of the parties, nor would the violation of any such alleged oral agreement amount to actionable fraud.'" *First Data POS, Inc. v. Willis*, 273 Ga. 792, 795, 546 S.E.2d 781 (2001) (quoting *Campbell v. C & S Nat'l Bank*, 202 Ga.App. 639, 640, 415 S.E.2d 193 (1992)). The Georgia Supreme Court has held that "the rational basis for [merger clauses] is that where parties enter into a final contract all prior negotiations, understandings, and agreements on the same subject are merged into the final contract, and are accordingly extinguished." *Health Serv. Ctrs. v. Boddy*, 257 Ga. 378, 380, 359 S.E.2d 659 (1987); *see Alpha Kappa Psi Bldg. Corp. v. Kennedy*, 90 Ga.App. 587, 83 S.E.2d 580 (1954) (holding that there cannot be justifiable reliance upon a pre-contractual representation when there is a merger clause in a contract). When a contract contains a merger clause, "that clause operates as a disclaimer, establish-ing that the written contract completely and comprehensively represents all of the parties' agreement" and thus "bars [Plaintiff] from asserting reliance on the alleged misrepresentation not contained within the contract." *Pennington v. Braxley*, 224 Ga. App. 344, 480 S.E.2d 357, 359 (1997).[2] Thus, as a matter of law, a valid merger clause executed by two or more parties in an arm's length transaction precludes any subsequent claim of fraud based upon pre-contractual representations. *First Data*, 273 Ga. at 796, 546 S.E.2d 781.

In *First Data*, the sellers of a corporation sought damages for fraudulent misrepresentations that allegedly induced them to enter into a stock purchase agreement with the defendant. The Georgia Supreme Court considered a merger clause virtually identical to the merger clause at issue in this case. The merger clause at issue in *First Data* read as follows: "[The] Agreement. . . . constitutes the entire agreement between the parties with respect to the subject matter contained herein and supercedes all prior agreements and understandings, both oral and written by and between the parties hereto with respect to the subject matter hereof." 273 Ga. at 792, 546 S.E.2d 781. The court held that this merger clause precluded any post-contractual claims of theft by deception, fraud, or misrepresentation. The court reasoned that "[u]nder the express terms of the Agreement, [plaintiffs] could not have reasonably placed their reliance upon any pre-contractual representation that was not also included in the Agreement's language, and thus [plaintiffs] could not have been deceived by such pre-contractual representations." *Id.* at 795, 546 S.E.2d 781.

---

1. As will be explained below, the Court finds that Plaintiff's actions subsequent to its discovery of the alleged fraud indicate that Plaintiff has affirmed the APA. *See infra* Part I.A.2.

2. Justifiable reliance is, of course, an essential element of a fraud claim.

· Here, the merger clause contained in section 10.5 of the APA states: "This Agreement ... constitutes the entire agreement of the parties hereto with respect to the subject matter hereof, and supercedes all prior agreements and understandings of the parties, oral and written, with respect to the subject matter hereof." APA § 10.5 (Cogan Aff. Ex. A.) By following the well established principles of contract law discussed above and the holding in *First Data,* this Court concludes that any pre-contractual representations made by Defendants were superceded by the merger clause contained in the APA, and the APA expressly put Plaintiff on notice that the APA's terms superceded any and all prior representations not contained in the APA. Any reliance on the pre-contractual representations would therefore be unreasonable. Thus, the merger clause in the APA bars Plaintiff's fraud claim based on Defendants' pre-contractual representations.

Attempting to avoid the plain language of the merger clause, Plaintiff argues that the merger clause does not apply because Defendants' concealment of the intrinsic defects in the Weed Wizard product prevented Plaintiff from exercising its own independent judgment when making the contract. Specifically, Plaintiff contends that Defendants were obligated to disclose any information that would have caused Plaintiff to reevaluate its decision to purchase the Weed Wizard assets. Plaintiff cites *Sires v. Luke,* 544 F.Supp. 1155 (S.D.Ga.1982), and *SCM Corp. v. Thermo Structural Prods.,* 153 Ga.App. 372, 265 S.E.2d 598 (1980), in claiming that the alleged fraud concerned intrinsic defects in the article forming the subject matter of the contract and that Defendants had a duty of disclosure because of the nature of the parties' relationship.

In *SCM Corp.,* the Georgia Court of Appeals accepted the plaintiff's argument that even though a party to a contract is ordinarily bound by a merger clause, "a merger clause is without application where the fraud allegedly perpetrated concerned intrinsic defects in the article forming the subject matter of the contract and was such as to prevent the defrauded party from exercising its own judgment." 153 Ga.App. at 373, 265 S.E.2d 598. The court of appeals affirmed the denial of a seller's motion to dismiss a buyer's fraud claim even though the parties' contract contained a merger clause because the buyer produced evidence that the seller had represented that the business was an established business capable of mass producing finished products of a marketable quality, when, in fact, the business was an experimental pilot project. The buyer also produced evidence that it was not able to view the manufacturing process in full operation because parts of the system were shut down for maintenance or repairs on each occasion that the buyer visited the plant. The court held that because this evidence raised an issue as to whether the seller had prevented the buyer from exercising its own judgment and had concealed and misrepresented a material defect relating to the business (the subject matter of the contract), the merger clause did not necessarily vitiate the buyer's fraud claim as a matter of law. *Id.*

However, this argument was rejected by the Georgia Court of Appeals in a more recent decision, *American Demolition, Inc. v. Hapeville Hotel LP,* 202 Ga.App. 107, 109, 413 S.E.2d 749 (1991). There, the plaintiff demolition company sued for fraud in connection with a contract to demolish a hotel. The plaintiff asserted that the defendant had concealed engineering reports that the plaintiff requested prior to entering into the contract and that those reports revealed defects in the hotel. The trial court granted the defendant's motion for summary judgment on all of the plain-

tiff's claims, and the court of appeals affirmed. The court of appeals held that the merger clause barred the plaintiff's fraud claim and rejected the plaintiff's argument that it was exempt from the merger clause because it was prevented from exercising its own independent judgment in making the contract. The Court determined that "[t]here [was] no evidence to suggest that this transaction was anything other than an arm's length transaction between two professionals[,] and there [was] no evidence that any special or confidential relationship existed to give rise to a duty to disclose." 202 Ga.App. at 109, 413 S.E.2d 749; *see also Charter Med. Mgmt. Co. v. Ware Manor, Inc.,* 159 Ga.App. 378, 384, 283 S.E.2d 330 (1981) (holding that a failure to disclose did not amount to concealment of intrinsic defect so as to prevent purchaser from exercising its own judgment because the transaction was at arm's length and there was no confidential relationship between the parties to give rise to a duty to disclose).

In this case, to the extent that Plaintiff's fraud claim is based on non-disclosure or concealment, Plaintiff has not alleged that the transaction was not an arm's length transaction or that any special or confidential relationship existed between Plaintiff and Defendants to create a duty to disclose. Moreover, unlike the plaintiff in *SCM Corp.,* Plaintiff was not prevented from observing the manufacturing process or any other aspect of the Weed Wizard business. To the contrary, Plaintiff's actions show that it took all the necessary steps to exercise its independent judgment in executing the APA; indeed, the APA was the product of the parties' negotiations over several months. Plaintiff conducted a due diligence investigation by retaining outside counsel, who reviewed files provided by Defendants concerning product liability issues involved with the Weed Wizard product, and by hiring an independent engineering firm to test the product. In fact, Plaintiff, with the aid of its attorneys, negotiated a contract that specifically provided that "[p]rior to the date [of closing] Buyer has made, directly and through its representatives, such investigation of the Company, the Business and the Purchased Assets as Buyer deems necessary or advisable ...." APA § 3.3 (Cogan Aff. Ex. A.) Therefore, Plaintiff cannot circumvent the APA's merger clause on the basis that Defendants' fraudulent actions prevented Plaintiff from exercising its independent judgment in forming the contract.

## 2. Rescission

Plaintiff argues in the alternative that the APA should be rescinded. As mentioned above, rescission would relieve Plaintiff of the APA's terms, and the merger clause would be without effect. "A contract may be rescinded at the instance of the party defrauded; but, in order to rescind, the defrauded party must promptly, upon discovery of the fraud, restore or offer to restore to the other party whatever he has received by virtue of the contract if it is of any value." O.C.G.A. § 13-4-60. However, a party "need not tender back what he is entitled to keep, and need not offer to restore where the defrauding party has made restoration impossible, or when to do so would be unreasonable." *Crews v. Cisco Bros. Ford–Mercury, Inc.,* 201 Ga.App. 589, 411 S.E.2d 518, 519 (1991). Because "[t]he tender rule is that neither party may retain an unfair advantage," courts are directed to take a "flexible and pragmatic approach ... toward the tender requirement." *Remediation Servs., Inc. v. Georgia–Pacific Corp.,* 209 Ga.App. 427, 433 S.E.2d 631, 636 (1993). The ultimate goal is to return the parties "as nearly as possible to the status quo ante." *Corbitt v. Harris,* 182 Ga.App. 81, 354 S.E.2d 637, 639 (1987).

Defendants argue that Plaintiff has not satisfied any of the requirements necessary to effectuate rescission under Georgia law. Specifically, Defendants contend that Plaintiff may not seek rescission as a matter of law because Plaintiff affirmed the contract, failed to timely rescind, and failed to tender the benefits of the contract.

Georgia law requires that rescission be timely. *See* O.C.G.A. § 13–4–60; *see also Holloman v. D.R. Horton, Inc.*, 241 Ga. App. 141, 146, 524 S.E.2d 790 (1999) ("An announcement of the intent to rescind the contract must be made in a timely fashion, as soon as the facts supporting the claim for rescission are discovered."). Georgia courts have held that as short a time as seven months is too late, as a matter of law, to notify the other party of intent to rescind. *See Orion Capital Partners*, 223 Ga.App. at 543, 478 S.E.2d 382 ("[E]ven accepting appellants' contentions that they sent a letter of rescission to appellees ... such a belated attempt (occurring approximately **seven months** after discovery of product substitution) is too late as a matter of law to constitute an effective rescission or reasonable offer to rescind the agreement.") (emphasis added); *see also Kobatake*, 162 F.3d at 627 n. 10 (finding that as a matter of law two years is too long to delay rescinding a contract); *Buckley v. Turner Heritage Homes, Inc.*, 248 Ga.App. 793, 795, 547 S.E.2d 373 (2001) (holding that trial court did not err in granting summary judgment on the plaintiff's claim for rescission because the plaintiff did not notify the defendant of her intent to rescind the contract until **ten months** after discovering the problems). Moreover, the aggrieved party must adhere to the intent to rescind and may waive any claim for rescission by failing to do so. *Holloman*, 241 Ga.App. at 145, 524 S.E.2d 790.

In this case, the APA was executed on February 28, 1998. Plaintiff discovered the Queensland Media Release as least as early as mid-August 1998. In October 1998, Plaintiff's attorney sent Defendants a letter that alleged that Defendants had breached the representations and warranties in the APA and stated that Plaintiff "will seek indemnification ... for all losses, damages (including lost profits), costs and expenses which we have or will suffer as a result of your breach of the representations and warranties under the [APA]." (Letter from Cogan to Butler of 10/23/98) (Cogan Aff. Ex. W.) The letter also states that it "does not constitute a waiver of any other legal or equitable claims that [Plaintiff] may have against [Defendants], including but not limited to [the] right to seek rescission of the [APA] ...." (*Id.*) In November 1998, Plaintiff sent another letter to Defendants and enclosed a draft complaint in which Plaintiff asserted a claim for rescission. (Letter from Cogan to McNeill of 11/20/98) (Cogan Aff. Ex. X.) Plaintiff did not file its complaint in this Court until August 1, 2000.

Plaintiff contends that these letters in October and November 1998 constitute valid and timely requests to rescind. On the other hand, Defendants argue that the correspondence from Plaintiff's counsel does not constitute a demand for rescission. The letters indicate that Plaintiff expressly reserved its right to rescind. However, correspondence indicating that Plaintiff may seek rescission of the APA does not constitute rescission under Georgia law. *See Carpenter*, 196 Ga.App. at 237, 395 S.E.2d 653. In *Carpenter*, the court held that a letter "offering to settle and return ownership" did not constitute rescission, especially since shortly thereafter the plaintiff acted under the contract. The court stated that the plaintiff

reached the fork of rescission or affirmance, equivocated, and chose to use the

[property] for his own ends rather than to return it to [the defendant] and unravel the purchase. From this point forward he was committed to reliance on the contract and in fact never made any further effort to disclaim it except when he filed his complaint and included a rescission count over a year later.

*Id.; see also S. Prestige Homes, Inc. v. Moscoso,* 243 Ga.App. 412, 532 S.E.2d 122 (2000) (holding that a letter from the plaintiff's attorney was not a rescission because the letter indicated only an attempt to rescind).

In this case, although Plaintiff asserts that the letters dated October and November 1998 constitute rescission, Plaintiff itself described the correspondences as its "reservation of its rights to seek rescission." (Pl.'s Br. in Opp'n to Defs.' Mot. for Summ. J. at 24.) Reserving the right to rescind by definition does not constitute actual rescission. Although Plaintiff's letters indicate that Plaintiff was considering the option of rescinding the APA, there was no actual demand for rescission as required by Georgia law.

Furthermore, *even if* the letters constituted a demand for rescission of the APA, Plaintiff's subsequent actions affirmed the APA, waived Plaintiff's claim for rescission, and prevented Plaintiff from later asserting rescission in this case. When a party makes a demand for rescission, but then proceeds to take actions affirming the contract, the party waives its right to rescind. *See Lakeside Investments Group, Inc. v. Allen,* 253 Ga.App. 448, 449–50, 559 S.E.2d 491 (2002) ("Even though the buyer may have early on unsuccessfully attempted to rescind the contract, improving the property thereafter shows an intent to treat the property as the buyer's own and thereby affirms the contract.") (citing *Paden v. Murray,* 240 Ga.App. 487, 489, 523 S.E.2d 75 (1999)); *see also Orion Capital Partners,* 223 Ga.App. at 542, 478 S.E.2d

382 (holding that a party affirmed the contract after a letter requesting rescission because the party engaged in a series of management decisions in an attempt to continue to operate the business in a profitable manner).

Examination of the record reveals uncontradicted evidence that following discovery of the alleged fraud, and after Plaintiff sent its letters in October and November 1998, Plaintiff continued to operate the Weed Wizard business by marketing the Weed Wizard product, relocating the manufacturing facilities from Georgia to Michigan, and cooperating with the federal government in the recall of one of the Weed Wizard products. (Defs.' Reply Br. in Supp. of Mot. for Summ. J. at 15–16.) Plaintiff neither offered to return nor actually returned the Weed Wizard assets it received in consideration for the purchase price, as is required to effectuate rescission under Georgia law. Moreover, Plaintiff took several actions under the provisions of the APA, which indicate its reliance on the contract. For example, Plaintiff accepted payment for office furniture in the form of a purchase price reduction under the APA, and as late as August 2000, Plaintiff has made numerous demands for indemnification pursuant to the terms of the APA. (Defs.' Reply Br. in Supp. of Mot. for Summ. J. at 15–16.) These actions are totally incompatible with contract rescission and plainly constitute an affirmation of the APA, which now precludes rescission in this case. Thus, the Court finds that Plaintiff affirmed the APA and is bound by its terms.

In conclusion, the Court finds that the merger clause in the APA bars Plaintiff's claim for fraud in this case, and the Court finds that Plaintiff is not entitled to rescission of the APA. Accordingly, the Court **GRANTS** Defendants' Motion for Partial

Summary Judgment on Plaintiff's fraud (Count One) and rescission (Count Two) claims. Because Defendants are entitled to summary judgment on Count Two of Plaintiff's Amended Complaint, the Court **DENIES AS MOOT** Defendants' Motion To Dismiss Count Two of Plaintiff's Amended Complaint with Prejudice.

## B. Count Three: Breach of Representation

Finally, Defendants move for summary judgment on Plaintiff's breach of representation claim. Plaintiff alleges that Defendants' failure to disclose the Australian Ban Order constitutes a breach of the representations and warranties set forth in section 4.11 of the APA. Specifically, Plaintiff alleges that Defendants breached the following portion of section 4.11:

> Other than as set forth on Schedule 4.11, there are no judgments, orders, stipulations, injunctions, decrees or awards in effect which name the Company, the effect of which is (A) to materially limit, restrict, regulate, enjoin or prohibit any business practice in any area, or the acquisition of any properties, assets or businesses, or (B) otherwise materially adverse to the Business or any of the Purchased Assets. . . .

APA § 4.11 (Cogan Aff. Ex. A.)

■ Defendants argue that the Australian Ban Order is not covered by this representation. Defendants assert that this portion of section 4.11 covers only those "judgments, orders, stipulations, injunctions, decrees or awards in effect which name" "Weed Wizard, Inc." Defendants contend that they did not have a duty to disclose the Australian Ban Order because it names only "Weed Wizard" products and not "Weed Wizard, Inc." This argument requires the Court to interpret the APA.

Under Georgia law, construction of a contract is a question of law for the court. O.C.G.A. § 13–2–1. "[T]he fundamental rule of contract construction is to give the [contract] the meaning which will best carry out the intent of the parties." *Schaffer v. City of Marietta,* 220 Ga.App. 382, 383, 469 S.E.2d 479 (1996) (citing *Brooke v. Phillips Petroleum Co.,* 113 Ga.App. 742, 744, 149 S.E.2d 511 (1966)); *see* O.C.G.A. § 13–2–3. When the terms are clear, unambiguous, and capable of only one reasonable interpretation, the court must look to the contract alone to ascertain the parties' intent. *Park 'N Go v. U.S. Fidelity & Guar. Co.,* 266 Ga. 787, 791, 471 S.E.2d 500, 503 (1996). In ascertaining intent, the court "must look at the instrument as a whole and consider it in light of all the surrounding circumstances." *Schaffer,* 220 Ga.App. at 383, 469 S.E.2d 479.

■ The Court disagrees with Defendants' overly technical interpretation of the APA.[3] When reading the sentence as a whole, the Court finds that the sentence unambiguously demonstrates the parties' intent that the representation would include things such as the Australian Ban Order, which completely prohibited the supply of all Weed Wizard products and similar devices in the State of Queensland, Australia. The sentence plainly provides that Defendants were required to disclose anything "the effect of which is (A) to

---

**3.** Defendants argue that the Court should strictly interpret this portion of section 4.11, especially when distinguishing the wording of the previous sentence. The first sentence refers to pending or threatened actions "against or relating to the Company, the Business or any of the Purchased Assets." In the drafting stages of the APA, the second sentence includ-
ed the same language as the first sentence in referring to orders that relate to "the Company, the Business or any of the Purchased Assets"; however, this language was changed prior to closing to limit the second sentence to orders that "name the Company." (Defs' Reply Br. in Supp. of Mot. for Partial Summ. J. at 30–31.)

materially limit, restrict, regulate, enjoin or prohibit any business practice in any area ..., or (B) otherwise materially adverse to the Business or any of the Purchased Assets...." The Australian Ban Order was exactly the type of information Plaintiff was trying to elicit—information about product liability issues surrounding the Weed Wizard products—through the representation clause in the APA.

Even if the Australian Ban Order were not covered by the second sentence, it would be covered under the first sentence. The first part of section 4.11 provides:

> Other than as set forth in Schedule 4.11 there are no claims, suits, actions, arbitration, investigations, inquiry or other proceeding before any governmental agency, court or tribunal, domestic or foreign, or before any private arbitration tribunal, pending or, to the best of the knowledge of the Company, threatened, against or relating to the Company, the Business or any of the Purchased Assets.

APA § 4.11 (Cogan Aff. Ex. A.) The Australian Ban Order certainly qualifies as an "investigation" or "inquiry" or "other proceeding" before a governmental body relating to the purchased assets (i.e., the Weed Wizard product).

By as early as June 1992, but certainly before the February 1998 closing date, Defendants allegedly had knowledge of the Australian Ban Order.[4] If Defendants knew of the Australian Ban Order, Defendants were required by this representation clause (or at least in the spirit of good faith and fair dealing) to disclose it to Plaintiff.

Therefore, the Court **DENIES** Defendants' Motion for Partial Summary Judgment on Plaintiff's breach of representation claim (Count Three).

## II. Discovery Motions

The remaining motions pending in the case are various discovery motions. Defendants have filed a motion to determine sufficiency of Plaintiff's responses to requests for admissions and two motions to compel. Plaintiff has also filed a motion to quash a subpoena served on a non-party accounting firm. All of these discovery motions involve Defendants' attempts to elicit information about Plaintiff's knowledge of issues regarding the safety of the Weed Wizard products prior to Plaintiff's acquisition of the assets. This information is central to Plaintiff's fraud claim and Defendants' defense to that claim. (See Br. in Supp. of Defs.' Mot. To Determine Sufficiency of Pl.'s Resp. to Req. for Admis. [53–1] at 2; Br. in Supp. of Mot. To Compel Resp. to Req. for Produc. of Docs & To Dep. of Richard Raleigh [60–1] at 3; Br. in Supp. of Defs.' Mot. To Compel Resp. to Subpoena Duces Tecum Served on BDO Seidman, LLP [88–1] at 2.)

Because these discovery motions relate only to Plaintiff's fraud claim, and because the Court has determined that Defendants are entitled to summary judgment on the fraud claim, the Court **DENIES AS MOOT** all of the pending discovery motions.

---

**4.** In June 1992, the Government of Queensland issued a Prohibition Notice banning the sale of the Weed Wizard product because it was "likely to cause an immediate risk to the health and safety of any person." (Cogan Aff. Ex. R.) On June 30, 1992, the Minister for Employment, Training and Industrial Relations issued a Media Release informing the public that the government had "banned the sale of potentially-lethal weed cutter and [was] issuing a statewide alert to home gardeners." (Cogan Aff. Ex. S.) Thereafter, the Queensland Government issued an order entitled "Fair Trading (Weed Wizard) Order 1993," which described the device known as the "Weed Wizard" and prohibited the supply of Weed Wizard products and similar devices in Queensland. (Cogan Aff. Ex. V.)

## 1264

### CONCLUSION

For the foregoing reasons, Defendants' Motion for Partial Summary Judgment on Counts One, Two, and Three of Plaintiff's Amended Complaint [61–1] is hereby **GRANTED in part and DENIED in part**. Defendants are entitled to summary judgment on Counts One and Two; however, Count Three may proceed to trial.

Defendants' Motion To Dismiss Count Two of Plaintiff's Amended Complaint with Prejudice [49–1], Motion To Determine Sufficiency of Plaintiff's Responses to A.A.B.B., Inc.'s Second Request for Admissions [53–1], Motion To Compel Further Responses to A.A.B.B., Inc.'s First Request for Production of Documents and To Deposition of Richard Raleigh [60–1], Consent Motion for Extension of Discovery [64–1], Motion To Quash Subpoena Served by Defendants Upon BDO Seidman, LLP [80–1], and Motion To Compel Responses to Subpoena Duces Tecum Served on BDO Seidman, LLP [88–1] are hereby **DENIED AS MOOT**.

Defendants' Motion To File Documents Under Seal [95–1] is hereby **GRANTED**. The Clerk is **DIRECTED** to place under seal Exhibits L through N attached to the Affidavit of Harris N. Cogan [87–1].

The Court further **ORDERS** the parties to file a consolidated pretrial order by June 30, 2002.